[No. 2084–2.   Division Two.   March 23, 1977.]

GLENN M. MORGAN, ET AL, *Respondents,* v. HORACE E. BURKS, ET AL, *Appellants.*

194

*Leonard Costello* and *Bishop, Cunningham & Costello,* for appellants.

*William R. Hickman, Ron J. Perey,* and *Reed, McClure, Moceri & Thonn,* for respondents.

REED, J.—On November 28, 1971, 16–year–old Glenn M. Morgan, while riding a motorcycle on or near a mobile home park in Kitsap County, was shot in the neck by Horace E. Burks. As a result, Glenn M. Morgan is now a quadriplegic, *i.e.,* completely paralyzed from the neck down. At the time of the shooting the trailer park was owned by Harlow–Burks, Inc.; Burks was president of the corporation and managed the property for it.

In February 1972, the boy's father, Glenn L. Morgan, for himself and his wife as parents, and as guardian ad litem

for his son, brought an action for damages against Burks and his marital community. When settlement negotiations broke down, the cause was set for trial to commence October 29, 1973. On that date all parties appeared with their attorneys. Although Morgans assumed they would be proceeding to trial that day, after further negotiations, the case was called and the following proceedings took place before the Honorable Jay W. Hamilton, Judge of the Superior Court for Kitsap County:

[Plaintiffs' attorney]: The plaintiffs are present . . ., Your Honor, together with Glenn Morgan, the father and the mother.

[Defendants' attorney]: The Burks are present, Your Honor. And it is my understanding we have arrived at a settlement of this matter, together with Mr. Burks taking the stand under oath and testifying as to the extent and his estimate of the value of his assets, is that correct?

[Plaintiffs' attorney]: In return for the proposed $50,000 maximum available insurance limits and $15,000 in cash payable in full in 60 days on a promissory note to be executed forthwith, *we will agree to a dismissal of this action.*

[Defendants' attorney]: So the record will have it, your further stipulation was that the promissory note bear no interest for the 60–day period and after 60 days bear the maximum rate of interest permitted by law of 12%, is that correct?

[Plaintiffs' attorney]: That's correct.

THE COURT: All right.

[Defendants' attorney]: Mr. Burks, come up.

(Italics ours.) The matter concluded after Burks testified regarding the nature and extent of his assets. The plaintiffs gave no testimony and neither the court nor counsel asked them if the settlement was understood and agreed to. No order of any kind was entered by the court on that date.

Subsequently, Morgans, claiming they neither understood nor agreed to the settlement terms and dismissal, refused to execute the releases that had been forwarded to

their attorney. Burks then deposited the money and promissory note with the court and moved for an order adjudging that the tender constituted a satisfaction of all claims and for dismissal of the suit with prejudice. This motion, supported only by the uncontradicted affidavit of Burks' attorney was presented to the Honorable Oluf Johnsen, Judge of the Superior Court for Kitsap County, on April 26, 1974. Morgans were present with their attorney, who informed the court his clients were questioning whether Burks had truly disclosed his assets and wished to delay the matter for 30 days for further investigation. Glenn L. Morgan asked to address the court, whereupon the following colloquy ensued:

THE COURT: Go ahead. What is it, Mr. Morgan?

MR. MORGAN: Well, Your Honor, there has been some misunderstanding with me and my attorneys, in fact—

. . .

MR. MORGAN: We felt all along that they were suing the corporation and Mr. Burks, and I didn't know this until I got here about 30 minutes before the trial and I have repeatedly asked information . . . about Mr. Burks' financial statement of what he owns.

. . .

MR. MORGAN: And I have never really been given any factual information of any true holdings of Mr. Burks and Mr. Burks would not even give his own attorney anything of this nature. And therefore, for the interest of justice and the severity of the case—my son has to go back in the hospital again,—and that I feel that something should be extended, and that this matter be changed over to where we are suing Mr. Burks and the corporation, which I felt we were doing in the first place.

. . .

[Defendants' attorney]: I will prepare an order, Your Honor. We have a problem with Your Honor going off the bench here in a day or two?

THE COURT: It better be presented on Monday or Tuesday. *I just want to point out that order, I suppose, is subject to being vacated for any grounds recited in the statute.* All I have before me is the motion and affi-

davit of [defendants' attorney]. Based upon those I am compelled to grant the motion.

(Italics ours.)

The actions were dismissed on April 29, 1974, and thereafter Morgans retained new counsel and moved to vacate the dismissal order pursuant to CR 60(b). On July 8, 1974, based upon affidavits from the Morgans and others, and upon live testimony from Mrs. Morgan and one of their attorneys, the Honorable Robert Hannan, visiting Judge of Pacific County Superior Court, vacated Judge Johnsen's order. The Morgans then amended their pleadings to join Harlow–Burks, Inc., as a defendant and a subsequent jury trial resulted in verdicts of $2 million for Glenn M. Morgan and $350,000 for his parents. Burks appeals and the sole issue is whether Judge Hannan erred when he vacated the April 29 order of dismissal. We hold he did not and affirm.

As we have mentioned, Judge Hannan's determination to vacate the previous order of dismissal was based on CR 60(b), which provides in part as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
>
> . . .
>
> (11) Any other reason justifying relief from the operation of the judgment.

It has long been the rule in Washington, both under prior statute,[1] and now by court rule, that motions to vacate or for relief from judgments are addressed to the sound discretion of the trial court, whose judgment will not be disturbed absent a showing of a clear or manifest abuse of that discretion. *United Pac. Ins. Co. v. Discount Co.,* 15

---

[1] CR 60 supersedes RCW 4.32.240, 4.72.010, 4.72.420, 4.72.030 and 4.72.040 to the extent they purport to cover relief from judgments. See Comments to CR 60. The rule is an embodiment of the court's inherent power to grant such relief. *Seattle–First Nat'l Bank v. Treiber,* 13 Wn. App. 478, 534 P.2d 1376 (1975).

Wn. App. 559, 550 P.2d 699 (1976); *Borg–Warner Acceptance Corp. v. McKinsey,* 71 Wn.2d 650, 430 P.2d 584 (1967); *Lane v. Department of Labor & Indus.,* 34 Wn.2d 692, 209 P.2d 380 (1949); *Larson v. Department of Labor & Indus.,* 174 Wash. 618, 25 P.2d 1040 (1933); *see also* Trautman, *Vacation and Correction of Judgments in Washington,* 35 Wash. L. Rev. 505 (1960).

Rule 60(b) is quite similar to Fed. R. Civ. P. 60(b), and federal courts have also consistently held that decisions to grant or deny relief under the federal rule are reviewable only for a manifest abuse of discretion. *Altman v. Connally,* 456 F.2d 1114 (2d Cir. 1972); *Martella v. Marine Cooks & Stewards Union,* 448 F.2d 729 (9th Cir. 1971), *cert. denied,* 405 U.S. 974, 31 L. Ed. 2d 248, 92 S. Ct. 1191 (1972). See also the many cases collected in Fed. R. Civ. P. 60, Notes of Decisions, notes 19–21, 28 U.S.C.A. (1970).

An abuse of discretion exists only when no reasonable man would take the position adopted by the trial court. *State v. Batten,* 16 Wn. App. 313, 556 P.2d 551 (1976). In the circumstances of the instant case it can hardly be said that Judge Hannan manifestly abused his discretion. The largely uncontroverted affidavits and courtroom testimony before him would support findings that: (1) when Morgans appeared before Judge Hamilton on October 29 they expected to go to trial that day and expected no settlement; (2) when the attorneys recited the terms of the proposed settlement to the court, Morgans could not hear all that was being said; (3) Morgans did not fully understand they were agreeing to accept $65,000 and dismiss forever their claims; (4) Morgans believed any action taken would preserve their claims against Burks' employer; (5) Morgans believed Burks took the stand only to reveal the nature and extent of his assets as proof he could respond no further than to contribute his insurance coverage and personal funds of $15,000; (6) Mrs. Morgan was not present during all the proceedings and was rebuffed at one point when she attempted to inquire of one of her attorneys. Of even greater significance is the fact

Morgans at no time were asked if they understood and agreed to the terms of the settlement. Judge Hannan referred to this absence of assent when he said:

the problem is there is nothing in the record to show a specific assent by any of the plaintiffs. At that time Glenn M. Morgan was over age, over the age of 18. And we have nothing to show that he ever assented to it after becoming 18.

Lending substance to Morgans' claims is the testimony of their attorney that:

it wasn't too long after that time that they had some conversations in my office which led me to believe that for some reason or another they did not understand the case had been settled.

Additionally, it appeared that Morgans' attorney had advised them that a separate settlement with Burks would in no way prejudice their right to pursue his corporate employer for additional damages. Subsequently, they were informed by letter they could not recover from Harlow–Burks, Inc., and were referred to the case of *Greene v. Rothschild,* 68 Wn.2d 1, 402 P.2d 356 (1965), 414 P.2d 1013 (1966).

When taken together these facts provide a more than sufficient showing that the dismissal order resulted from serious misunderstandings between attorney and client, as the result of which the Morgans did not in fact, authorize their attorneys to bind them to the settlement and dismissal; nor did they give their informed consent thereto. This is reason enough to vacate the dismissal order under CR 60. *Kelly v. Belcher,* 155 W. Va. 757, 187 S.E.2d 617, 626 (1972); *Robinson v. Hiles,* 119 Cal. App. 2d 666, 260 P.2d 194, 196 (1953).

Nor, as Burks contends, does RCW 2.44.010, which deals with the binding effect of open court stipulations and agreements by attorneys, create any such authority. *Grossman v. Will,* 10 Wn. App. 141, 516 P.2d 1063 (1973); *Barton v. Tombari,* 120 Wash. 331, 207 P. 239 (1922).

Absent express authority or an informed consent or ratification, attorneys may not waive, compromise or bargain away a client's substantive rights. *Cf. Grossman v. Will, supra.*

Yet another reason dictates affirmance of Judge Hannan's action. As the judge aptly noted, Glenn M. Morgan had attained the age of 18 years prior to the purported settlement of April 29. The authority of his father as guardian ad litem to settle his claims terminated automatically on the youth's 18th birthday. RCW 11.88.140(1), (3); *In re Brown,* 6 Wn.2d 215, 101 P.2d 1003 (1940); *Lyons v. McElroy,* 104 Wash. 481, 484, 177 P. 312 (1918); *Meeker v. Mettler,* 50 Wash. 473, 97 P. 507 (1908); 43 C.J.S. *Infants* § 113 (1945); 42 Am. Jur. 2d *Infants* § 170 (1969); *Citizenship for Eighteen Year Olds—Age of Majority in Washington—Ch. 292, Washington Laws of 1971,* 47 Wash. L. Rev. 367, 377 (1972). There was no showing that young Morgan, after attaining his majority, expressly authorized either his father or his father's attorneys to agree to the settlement and dismissal; nor did he expressly approve, consent or ratify such action in open court on October 29.

■ Finally, we think the order vacating was properly entered under CR 60(b) to avoid a manifest injustice. The settlement figure of $65,000, while substantial, was out of all proportion to just compensation for Glen M. Morgan's injuries. When granting the motion to vacate, Judge Hannan noted, "He should have half a million, actually." While recognizing the uncertainties of recovering any further sums, the judge felt a trial on the merits was necessary in the furtherance of justice. A stipulated settlement which is entered into improvidently is subject to being vacated. *See Stevenson v. Hazard,* 152 Wash. 104, 277 P. 450 (1929).

The order vacating the order of dismissal is affirmed.

PETRIE, C.J., and PEARSON, J., concur.