[No. 5823–1.   Division One.   December 4, 1978.]

ANGUS W. LENHOFF, ET AL, *Respondents*, v. BIRCH BAY REAL ESTATE, INC., ET AL, *Appellants*.

*Abbott, Lant & Fleeson, Kargianis & Austin, Russell A. Austin, Jr.,* and *George Kargianis,* for appellants.

*Asmundson, Rhea & Atwood,* for respondents.

RINGOLD, J.—The defendant Barbara Turner appeals from a judgment construing a covenant in a plat to prohibit a mobile home and ordering its removal. We affirm the trial court's findings and conclusions, but reverse the judgment ordering the removal of the structure.

Ms. Turner purchased a lot in the Birchmont Addition subdivision, the plat subject to the following protective restrictions recorded in 1956:

No buildings shall be erected or placed upon the above described property until the design, plans, specifications and locations thereof have been approved in writing by the grantors, andsaid [*sic*] buildings shall be constructed

in accordance with the plans and specifications as approved by the grantors.

. . .

. . . [N]o building or structures shall be moved in and set upon any of said property but that [sic] all construction in said addition must be of new construction.

Ms. Turner established her dwelling upon the lot in question. The structure consists of two modules brought to the site and placed on a foundation, and includes a basement constructed at the site. She paid cash, some $44,000 for her house.

At the conclusion of the trial the court found that the defendant had actual knowledge of the restrictive covenants when she undertook to establish the home on the site and that she did not attempt to comply with the terms of the restrictions, to obtain the prior approval of anyone, or to inform anyone of the use to which she was going to put the lot. Having entertained parol evidence by one of the original parties to the covenants the court concluded that the covenants are not obsolete or unreasonable by virtue of changed conditions, and that a literal reading of the covenants is not unreasonable to preclude the placing of a mobile home on the lot.

### Ambiguity by Changed Conditions

■■ Ms. Turner's basic contention is that because the building technology exemplified by her house was unknown and unforeseen at the time the restrictive covenants were drafted, they are ambiguous. Ambiguity is a question of law to be settled by the court. *State Bank v. Phillips,* 11 Wn.2d 483, 119 P.2d 664 (1941); *Beedle v. General Inv. Co.,* 2 Wn. App. 594, 469 P.2d 233 (1970). In making its determination the trial court, looking to the instrument in its entirety and to surrounding circumstances where the meaning is doubtful, must be concerned primarily with the intent of the drafters.

The recognized principles for construing covenants are set forth in *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965) wherein the court said at pages 621–22:

(1) The primary objective is to determine the intent of the parties to the agreement, and, in determining intent, clear and unambiguous language will be given its manifest meaning. (2) Restrictions, being in derogation of the common–law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. Doubts must be resolved in favor of the free use of land. (3) The instrument must be considered in its entirety, and surrounding circumstances are to be taken into consideration when the meaning is doubtful.

(Citations omitted.)

Such "surrounding circumstances" as may be considered are only those which tend to reflect the intent of the drafters; circumstances extant at the time the covenant is sought to be enforced are irrelevant to the question of ambiguity.

Unless there is an ambiguity in the writing, the intent of the parties is to be gathered from the document. *Gwinn v. Cleaver,* 56 Wn.2d 612, 354 P.2d 913 (1960).

The trial court, over objection, permitted parol evidence. Mr. Einar Simonarson, a lawyer who developed the real estate addition, had drafted the restrictive covenants. He testified that the modern mobile home was not contemplated by the restrictions and stated: "I have had many requests to move trailer houses and I make a distinction now between trailer houses and mobile homes." Simonarson also testified that he had no objections to the particular structure and he believed now that it would not be violative of the restrictive covenants. Other testimony was presented to the effect Mr. Simonarson had previously interpreted the covenants to proscribe "mobile homes" and "move–ins."

The subjective intentions of Mr. Simonarson are not dispositive of the intentions of the parties as manifested by the documents.

The trial court in its oral opinion observed:

[B]e it in a statute or be it in a contract or as is this case, be it in a restrictive covenant, we have got some words that describe a situation and then you have circumstances that arise that are not directly and completely

obviously covered by them, in that there was nothing equivalent to the modern mobile home when these were drafted. So of necessity we can't be surprised that we are left trying to apply to new facts some old rules.

The trial judge considered all the evidence, then strictly construed the covenants as literally meaning "no building or structure shall be moved in and set upon . . ." the lots. In accord with the principles announced in *Burton v. Douglas County, supra,* he concluded that no ambiguity will be read into the document and applied the language as proscribing the mobile home.

Ms. Turner also argued that the phrase "*but* that all construction must be of new construction," (italics ours) is a qualifying phrase limiting the buildings or structures which may not be moved in or set upon the property, and thus excludes a "new mobile home" from the restrictions. Ms. Turner would have us read the word "but" as meaning "unless." This does violence to the language and would have the court redraft the covenant. In our opinion the word "but" is used as a conjunction meaning "and," adding the requirement that all buildings and structures erected shall be of "new construction."

The trial court considered the covenants as unambiguous and applied a literal interpretation. The trial judge's findings on this issue were based upon substantial evidence in the record and were not erroneous.

### Propriety of Mandatory Injunction

■■ The granting or withholding of an injunction is addressed to the sound discretion of the trial court to be exercised according to the circumstances of the particular case. *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 603, 508 P.2d 628 (1973). *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971), teaches as follows:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is

right under the circumstances and without doing so arbitrarily or capriciously. Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.

Whether this discretion is based on untenable grounds, or is manifestly unreasonable, or is arbitrarily exercised, depends upon the comparative and compelling public or private interest of those affected by the order or decision and the comparative weight of the reasons for and against the decision one way or the other.[1]

(Citations omitted.)

We apply this test to determine whether the trial court abused its discretion by granting the mandatory injunction. The criteria a trial court must use in deciding whether to grant injunctive relief are:

(a) the character of the interest to be protected, (b) the relative adequacy to the plaintiff of injunction in comparison with other remedies, (c) the delay, if any, in bringing suit, (d) the misconduct of the plaintiff if any, (e) the relative hardship likely to result to the defendant if an injunction is granted and to the plaintiff if it is denied, (f) the interest of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment.

*Holmes Harbor Water Co. v. Page, supra* at 603.

---

[1]We recognize that there are two standards presently extant by which to determine abuse of discretion. *Associated Mortgage Investors v. G.P. Kent Constr. Co.,* 15 Wn. App. 223, 548 P.2d 558 (1976); *Neal v. Wallace,* 15 Wn. App. 506, 550 P.2d 539 (1976); *Malfait v. Malfait,* 54 Wn.2d 413, 341 P.2d 154 (1959); *Reid Sand & Gravel, Inc. v. Bellevue Properties,* 7 Wn. App. 701, 502 P.2d 480 (1972). A more restrictive rule, however, also has currency in this jurisdiction. The other rule expressed by *Morgan v. Burks,* 17 Wn. App. 193, 198, 563 P.2d 1260 (1977), provides that "[a]n abuse of discretion exists only when no reasonable man would take the position adopted by the trial court." *See also Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970); *Rehak v. Rehak,* 1 Wn. App. 963, 465 P.2d 687 (1970). We consider the less restrictive rule, allowing the appellate tribunal greater latitude in assessing the trial court's ruling, to be especially well suited to appellate review of the trial court's exercise of its enormous equity power in granting a mandatory injunction, the "strong arm of equity."

In the present instance the character of the interest to be protected is that of the other property owners in the Birchmont Addition in protecting their property from the untoward effects of substandard housing within the area covered by the covenants. Having examined the photographic exhibits in evidence, we are of the opinion that the offending structure is not immediately identifiable as a "mobile home" and that, therefore, the protection of the interest of the other property owners in the Addition does not require removal of Ms. Turner's house. Other relief in the form of damages is expressly envisioned in the covenant itself, notwithstanding the availability of damages even absent such a provision. The inclusion of such a provision in the original covenant tends to underscore the adequacy of damages as compared to injunctive relief.[2] The third element of the *Holmes* test, delay, is inapropos in the context of a mandatory injunction. As for the misconduct of the plaintiff, we note that there was evidence at trial tending to show that the requirement of prior approval of building plans had been habitually and substantially violated over a long period of time. The nonenforcement of these provisions diminishes the meritoriousness of the conduct of the plaintiffs in charging Ms. Turner with violation of these restrictions. In weighing the relative hardship of the parties whether or not the injunction should stand, it is clear that Ms. Turner will sustain a severe hardship in having to remove the structure from the lot. The plaintiffs bear the burden of proving that they would suffer substantial damage if the mobile home is not removed. *Holmes Harbor*

---

[2]The Birchmont Addition protective restrictions provide: "If the parties hereto, or any of them, or their heirs, executors, administrators or assigns, shall violate or attempt to violate any of the provisions of these Restrictive Mutual Easements and Covenants of Birchmont Addition, it shall be lawful for any other person or persons owning any real property situated in Birchmont Addition to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any of said Mutual Easements and covenants, and either to prevent him or them from so doing or to recover damages or other dues for such violation."

*Water Co. v. Page, supra.* No such proof has been presented. The mobile home has been permanently bolted to the foundation and both the wheels and tongue of the home have been removed. Sewer and water have been installed underground to the home. At least $2,200 of landscaping has been completed. The plaintiffs herein will not be subjected to a significant hardship because (1) the Turner residence is not significantly different in appearance from other dwellings in the Addition, and (2) they may be relegated to the remedy of damages, if such be provable. The hardship scale tips markedly, then, toward damages rather than injunction. The interests of other residents of the Addition and of the public are not materially affected because the Turner residence is not significantly different in appearance from other dwellings in the Addition.

We see no compelling reason that a mandatory injunction was necessary in these circumstances.

Such an appellate reevaluation of the trial court function, while a necessary element, is not sufficient for reversal. Abuse of discretion, as defined in *State ex rel. Carroll v. Junker, supra,* must be shown. In assessing the comparative weight of the reasons for and against the decision to grant the injunction, the failure of the trial court to consider the change in technology in home construction between the time the covenants were effectuated and now provides a weighty reason against upholding the trial court's grant of equitable relief. Whether the changed conditions consist of changes in the neighborhood, already recognized as a factor relevant to injunctive relief, Restatement of Property § 564 (1944), or changes in technology, as here, such changes are germane to the exercise of discretion by the trial court in deciding proper relief. In the instant case the development of house–building technology in a manner not contemplated by the drafters of the restrictive covenants weighs heavily against the injunction.

Nowhere in the record does it appear that the trial judge gave any consideration to the changes in house–building

technology in his determination to grant the mandatory in-junction.

We conclude that the trial court exercised its discretion upon an untenable ground constituting an abuse of discretion. We, therefore, reverse the decree requiring the removal of the home.

Reversed and remanded for trial on damages.

FARRIS, C.J., concurs.

SOULE, J. (concurring in part; dissenting in part)—I am unable to fully agree with the opinion of the majority. I do agree that the mandatory injunction should be dissolved and the case remanded for trial on damages even if the covenants were breached. I further agree that no ambiguity can be read into the covenants merely because housing technology has advanced since the covenants were drafted. However, I cannot agree that the problem can be solved by substituting the conjunction "and" for "but" in the last portion of the covenants set forth below.

To me, ambiguity is created by those portions of the covenants which state:

(1) No buildings shall be erected or *placed upon* the above described property until the design, plans, specifications and locations thereof have been approved in writing by the grantors, and said buildings shall be constructed in accordance with the plans and specifications as approved by the grantors.

(2) . . . and no building or structures shall be moved in and *set upon* any of said property *but that all construction* in said addition must be of new construction.

(Italics mine.)

Not only are paragraphs (1) and (2) inconsistent with each other, but the last portion of paragraph (2) is independently ambiguous.

Ambiguity has been defined as "Duplicity, indistinctness, or uncertainty of meaning of an expression used in a writ-

ten instrument." *Black's Law Dictionary* 105 (4th ed. rev. 1968).

Where language in a written instrument is reasonably susceptible of more than one construction, it is ambiguous. *Ladum v. Utility Cartage, Inc.,* 68 Wn.2d 109, 411 P.2d 868 (1966); *Farmers Ins. Co. v. U.S.F.&G. Co.,* 13 Wn. App. 836, 537 P.2d 839 (1975).

If paragraph (2) had simply stated that "no building or structures shall be moved in and set upon any of said property," I would have no difficulty in concluding that the covenant is not ambiguous and that a mobile home is prohibited by its terms. While arguably, a mobile home is not a "building" until the component portions are joined, each section is a "structure." RCW 46.04.302. *See Grant County v. Bohne,* 89 Wn.2d 953, 957, 577 P.2d 138 (1978). Ambiguity is created by the addition of the language "but that all construction in said addition must be of new construction." The word "but" has many meanings. A common meaning is "on the contrary" or "on the other hand." *Webster's Third New International Dictionary* (1964), and, in my opinion, such a meaning is reasonable in the context of the covenant.

A fundamental rule in the construction of a written instrument is that every word or phrase must be presumed to have been employed with a purpose and must be given meaning and effect whenever possible. *Ball v. Stokely Foods, Inc.,* 37 Wn.2d 79, 221 P.2d 832 (1950); *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P.2d 614 (1935). Words should not be treated as surplusage if it can be avoided.

Under the doctrine of "noscitur a sociis," the meaning of words may be indicated or controlled by those with which they are associated. *Ball v. Stokely Foods, Inc., supra.* Applied to the words here in issue, the subordinate clause becomes "no building or structures shall be moved in and set upon any of said property [on the contrary] or [on the

other hand] that all construction in said addition must be of new construction." So understood, the phrase "building or structures" is modified in a qualitative manner and can be reasonably considered the equivalent of the interpretation for which defendant contends, namely that buildings or structures are not to be moved in unless they are of new construction. In substituting the conjunction "and" for "but," the majority, in my judgment, glosses over other equally reasonable interpretations.

In giving his oral opinion, the attention of the trial judge seems to have been concentrated primarily on the issue of whether or not the covenant restriction was outmoded. Nothing in it suggests that he gave consideration to the effect of the clause "but that all construction in said addition must be of new construction" as it may qualify the restriction against buildings or structures being moved in or set upon the property. By failing to do so, it appears to me that without saying so, he treated the clause as surplusage.

The ambiguity is compounded by the existence of that portion of the covenant which states that "no buildings shall be erected or *placed upon* . . . the . . . property . . . *until* . . . approved in writing by the grantors." (Italics mine.) The phrase "placed upon" when used in conjunction with the word "erected" at least suggests that "erection" is not the only way to achieve a building on site, but that one may also be "placed" thereon under some circumstances. The term "placed upon" as used in the first quoted covenant, and the term "set upon" as used in the second quoted covenant, could appear to the ordinary person to be synonymous and such reader well could be confused by reading one covenant which permits him to "place" a building upon the property after obtaining approval in writing, but inconsistently prohibits him from "setting" it upon property. In so observing, I recognize that defendant does not claim to have been confused by the covenants, rather, she denies subjective awareness of them. However, faced with a legal challenge to her action, she is entitled to the defenses which the law affords even though belatedly discovered. ·

Although the covenant can be read narrowly and literally so as to prohibit the bringing in of any building or structure, it can also be read to prohibit only the bringing in of buildings and structures which are not of *new construction.* Therefore, I believe the trial court erred in construing the covenant against, rather than in favor of, the defendant. The law requires that where a covenant is ambiguous, it must be construed to uphold the public policy favoring the free and unrestricted use of land. Imposed restrictions will not be aided or extended by judicial construction and doubts will be resolved in favor of the unrestricted use of property. *Burton v. Douglas County,* 65 Wn.2d 619, 399 P.2d 68 (1965); *Gwinn v. Cleaver,* 56 Wn.2d 612, 354 P.2d 913 (1960); *Foster v. Nehls,* 15 Wn. App. 749, 551 P.2d 768 (1976); *Holmes Harbor Water Co. v. Page,* 8 Wn. App. 600, 508 P.2d 628 (1973).

I would reverse the judgment and dismiss the complaint.