[No. 28547-5-I.   Division One.   December 31, 1992.]

JOHN W. PARRY, ET AL, *Respondents*, v. LARRY HEWITT,
ET AL, *Appellants*.

*Lorna Corrigan,* for appellants.

*Catherine Wright Smith* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for respondents.

AGID, J. — Mark and Donna Thomas appeal the partial summary judgment and the final judgment entered against them in favor of John Parry and his mother, N. Gladys Parry (collectively, Parry). The Thomases contend that the trial court erred by denying their motion for partial summary judgment and concluding as a matter of law that their mobile home was a trailer under the restrictive covenants of the Highrock subdivision. They also assert that the court abused its discretion by granting provisional injunctive relief and that the damage award was not supported by substantial evidence. Parry cross-appeals, arguing that the trial court erred by refusing to consider the testimony of nonparty lot owners and by denying an injunction requiring the Thomases to move their mobile home from the subdivision. We reverse.

On a mountainside outside Monroe, Washington, numerous 5-acre tracts of land form a development called Highrock. Although developers began work on Highrock in 1978, bankruptcy precluded completion of the project. As a result, the roads within the subdivision remained either dirt or gravel and no central water system was provided to the lots as originally planned.

All of the lots in Highrock are subject to restrictive covenants that were drafted and recorded in 1978. Among the pertinent restrictive covenants are the following:

7. No structure of a temporary character, trailer, basement, tent, shack, garage, barn or any other outbuilding (other than

a garage, barn or other outbuilding constructed according to plans provided by a licensed architect or engineer), shall be located on any lot nor shall such structure be used on any lot at any time as a residence, either temporarily or permanently.

. . . .

9. No trailer or camper of any type, no truck larger than ¾ ton, no truck of any type mounting a camper or other large body, shall be parked in front of the setback line of any lot. Neither shall any of the aforesaid be parked overnight on the street in front of any lot except for an occasional vehicle belonging to [a] guest.

. . . .

13. No lot shall be used except for residential purposes. No dwelling shall be erected, altered, placed or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private car shelter for not less than two cars, other than as herein provided.

In September 1988, Mark and Donna Thomas purchased an undeveloped 5-acre tract in the subdivision for $14,000. They were not aware of the Highrock covenants when they purchased the lot. To make their lot habitable, the Thomases hired various contractors to clear a roadway, install a septic system, and create a tank and drain field. They also laid a cement foundation for their mobile home, graveled portions of their yard, and drilled a well for water. The total cost of those improvements was approximately $18,000. The Thomases spent another $15,800 to extend the electrical service to their lot from where it ended 3,000 feet away in the unfinished subdivision.

In August 1989, the Thomases bought a 1985 mobile home measuring 28 feet by 66 feet. The home cost $31,817, which included the expense of the difficult move to their Highrock lot. The 1,800-square-foot mobile home was built in accordance with HUD standards and contains a large master bedroom and three bathrooms. It has wood siding, a composition roof, plasterboard walls, and cathedral ceilings as well as insulation, wiring, and plumbing like that found in "stick-built" dwellings. The home cannot be seen from the road or Parry's lot.

A few months before the Thomases moved their mobile home onto their lot, John Parry bought a 5-acre tract in High-

rock for approximately $42,000 with the intention of building a home there. Apparently Parry's lot was more valuable than most because of its western view. At that time, no stick-built homes existed in the subdivision, although one was being built. At least two mobile homes were situated on different Highrock lots, but Parry did not become aware of them until after he started building his own house. That discovery disturbed Parry because he believed that the Highrock covenants excluded mobile homes, and he would not have purchased his lot if the development permitted them.

When Parry later saw the Thomases moving their mobile home to their lot, he told them that the covenants prohibited such homes. Because the Thomases had already spent considerable time and money preparing their property for the mobile home, they continued to move it onto their lot. Parry's attorney sent the Thomases a letter demanding that they remove their mobile home, but they refused.

Parry then sought a declaratory judgment that mobile homes were prohibited by the covenants and asked the superior court to enjoin violation of the covenants by issuing a permanent mandatory injunction. On cross motions for summary judgment, Judge Thorpe concluded as a matter of law that the Thomases' mobile home was a trailer within the meaning of the restrictive covenants and, therefore, the home violated the covenants. At a subsequent trial to determine damages, Judge Pro Tempore Rutter awarded damages of $5,000 against the Thomases on the ground that the presence of their mobile home decreased the value of Parry's lot by that amount. In addition, the court ordered that if the Thomases did not pay the judgment on the dates it ordered, their mobile home would be removed from Highrock. The trial court also awarded Parry $10,000 in attorney fees and $1,042 in costs. The Thomases appeal.

The pivotal issue in this case is whether the trial court erred as a matter of law by concluding on summary judgment that the mobile home was a trailer prohibited by the Highrock restrictive covenant. Summary judgment is appro-

priate when the pleadings, depositions, admissions, and affidavits, if any, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ryder v. Port of Seattle*, 50 Wn. App. 144, 148, 748 P.2d 243 (1987). Here, the parties agree that there are no genuine issues of material fact. They raise only a legal issue: Does the word "trailer" in the restrictive covenants include the Thomases' mobile home?

■ The interpretation of language contained in a restrictive covenant is a question of law. *Krein v. Smith*, 60 Wn. App. 809, 811, 807 P.2d 906, *review denied*, 117 Wn.2d 1002 (1991). As stated in *Burton v. Douglas Cy.*, 65 Wn.2d 619, 621, 399 P.2d 68 (1965), the following rules govern the interpretation of restrictive covenants:

> (1) *The primary objective is to determine the intent of the parties to the agreement*, and, in determining intent, clear and unambiguous language will be given its manifest meaning. (2) Restrictions, being in derogation of the common-law right to use land for all lawful purposes, will not be extended by implication to include any use not clearly expressed. *Doubts must be resolved in favor of the free use of land.* (3) The instrument must be considered in its entirety, and surrounding circumstances are to be taken into consideration when the meaning is doubtful.

(Citations omitted. Italics ours.) 65 Wn.2d at 621-22. A covenant is strictly construed against one who claims the benefit of the restriction. *Sandy Point Imp. Co. v. Huber*, 26 Wn. App. 317, 320, 613 P.2d 160 (1980); *see also Berg v. Hudesman*, 115 Wn.2d 657, 677, 801 P.2d 222 (1990).

■ Application of these rules to the covenants at issue here compels the conclusion that the Thomases' mobile home does not violate the restrictions. First, the obvious intent of the parties involved in drafting the Highrock covenants was to assure the attractiveness and permanence of the homes in the subdivision. That intent is apparent not only in the language of the covenants, but also from the extrinsic evidence presented to the trial court. *See Berg*, 115 Wn.2d at 667 ("extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in

ascertaining the parties' intent"). As the affidavit of Gerald G. Tuttle, the attorney who drafted the Highrock covenants in 1978, stated:

> My recollection of the intent of the incorporators was that the covenants were intended to prevent temporary "eyesores" and junk such as old travel trailers. I have no memory of any discussion of or intention on the part of my clients to preclude the placement of modern-day manufactured homes.[1]

Contrary to Parry's position, Tuttle's affidavit supports the conclusion that the drafters of the 1978 covenants did not intend to exclude mobile homes such as the Thomases'. At most, it creates a question about the drafter's intent. As we noted above, any doubt about the scope of a restriction must be resolved in favor of the free use of land. *Burton*, 65 Wn.2d at 622.

■ ■ Second, looking at the Highrock covenants as a whole, the use of the word "trailer" is ambiguous because it is used to describe both structures (covenant 7) and vehicles (covenant 9). Despite that dual usage, "trailer" is defined nowhere in the covenants. An ambiguity exists if language is "reasonably capable of being understood in more than one sense." *General Tel. Co. of Northwest, Inc. v. C-3 Assocs.*, 32 Wn. App. 550, 554, 648 P.2d 491 (1982). Here, the term "trailer" can be understood both as a vehicle and a structure. That ambiguity must be construed against the drafters and those claiming the benefit of a restriction. *Sandy Point*, 26 Wn. App. at 320; *Burton*, 65 Wn.2d at 621-22. As such, it must be construed to refer not to an 1,800-square-foot, permanently installed mobile home but to less permanent vehicles and structures like travel trailers and homes that are reasonably viewed as movable.

We have found only one Washington opinion addressing a comparable issue. In *Lenhoff v. Birch Bay Real Estate, Inc.*, 22 Wn. App. 70, 73, 587 P.2d 1087 (1978), the court considered the following restrictive covenant:

---

[1] No argument was raised on appeal about the admissibility of Tuttle's affidavit.

> No buildings shall be erected or placed upon the above described property until the design, plans, specifications and locations thereof have been approved in writing by the grantors, andsaid [*sic*] buildings shall be constructed in accordance with the plans and specifications as approved by the grantors.
>     . . . .
>     . . . [N]o building or structures shall be moved in and set upon any of said property but that [*sic*] all construction in said addition must be of new construction.

22 Wn. App. at 71-72. The appellant in that case argued that the covenants were ambiguous and the drafters could not have intended to exclude a mobile home like hers from the development because the technology used to construct her home was unknown and unforeseen when the covenants were drafted. This court affirmed the trial court's conclusion that the technological advances in mobile home construction did not themselves create an ambiguity in the covenants. *Lenhoff*, 22 Wn. App. at 74. The court further concluded that the last sentence of the above quoted covenant, which prohibits moving a structure onto the property and requires all structures erected to be "of new construction", excluded mobile homes. *Lenhoff*, 22 Wn. App. at 72, 74.

*Lenhoff* is not controlling here. The Highrock covenants do not prohibit moving a structure onto a lot in the development. To the contrary, covenant 13 contemplates that a dwelling may be "placed" on a lot so long as it is "one detached single-family dwelling not to exceed two and one-half stories in height". In addition, as discussed above, an ambiguity exists in the Highrock covenants that was not present in the covenants at issue in *Lenhoff*. Consequently, the Thomases need not rely on an argument that advancements in the technology of mobile home manufacturing or other external circumstances create an ambiguity in covenants drafted before the technology existed. The ambiguity on which they rely is inherent in the dual use of the term "trailer" within the covenants themselves.

Parry relies heavily on *Timmerman v. Gabriel*, 155 Mont. 294, 289-99, 470 P.2d 528, 530 (1970).[2] There, the Montana Supreme Court was asked to determine whether the following restrictive covenants prohibited the use of mobile homes:

■ "Said lot or lots shall be improved only by the erection of a one-family dwelling house constructed of new materials[.]"
■ "No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other out building shall be used on any lot at any time, as a residence, either temporarily or permanently, nor shall any residential structure be occupied for residential purposes until completely finished."

*Timmerman*, at 295-96. The court construed the word "trailer" to include mobile homes and concluded that mobile homes were not "so essentially unlike a trailer as to exclude them from the general definition of 'trailer'." *Timmerman*, at 298.

In contrast to *Timmerman*, other jurisdictions have found that similar covenant language does not include mobile homes. For example, *Holtmeyer v. Roseman*, 731 S.W.2d 484 (Mo. Ct. App. 1987) involved a covenant that read as follows:

"No structure of a temporary nature, trailer, basement, tent, shack, garage or other out building shall be used on any lot at any time as a residence either temporarily or permanently."

(Italics omitted.) *Holtmeyer*, 731 S.W.2d at 485. In concluding that the appellant's mobile home was not a trailer and therefore not excluded by the covenants, the court stated that

[t]he trend of authority in the past twenty years is toward a recognition of the increasingly important role mobile homes have come to play in providing housing for the citizens of this country. *Size, design and appearance have been greatly improved over the trailers and mobile homes of the not-too-distant past.*

. . . .

Our review of the above cases has led us to the conclusion that a mobile home and a trailer are distinct and different structures. In terms of size, cost, and utilization, the mobile home consti-

---

[2]Although *Timmerman* was decided 8 years before *Lenhoff*, this court did not rely on the Montana case in its decision.

tutes a vital form of permanent housing. The trailer, on the other hand, constitutes a popular travel or recreational vehicle.

(Italics ours.) *Holtmeyer*, 731 S.W.2d at 486.

We find the reasoning of *Holtmeyer* more persuasive than that of *Timmerman*, particularly in light of the agreed facts in this case. The Thomases' mobile home is of the same quality and size as the stick-built homes in Highrock and meets the same code requirements as the other homes. Further, as Parry's attorney conceded during oral argument, if the Thomases built a structure on their lot identical to their mobile home, that structure built onsite would comply with the Highrock covenants. In the absence of a provision in the Highrock covenants like the one relied on by the *Timmerman* court requiring onsite construction, the rules enunciated in *Burton* compel the conclusion that the Highrock covenants do not prohibit the Thomases' mobile home. Hence, the Thomases' mobile home complies with the intent and purposes of the covenants, and there is no basis on which to find that other Highrock lot owners are damaged by the presence of the Thomases' home. Because of our disposition of this issue, we do not reach the other issues raised by the parties on appeal.

Pursuant to RCW 4.84.330[3] and article 6 of the covenants,[4] the Thomases are entitled to their attorney fees and

---

[3]RCW 4.84.330 reads as follows:

"In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

". . . .

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

[4]Article 6 of the Highrock covenants provides that the covenants "may be enforced by proceedings at law or in equity brought by the Association or any owner, which proceedings may be brought for the purpose of securing equitable relief, monetary damages or both.

"In any proceedings at law or in equity pertaining hereto, the Court determining the matter shall have the right to assess costs, including those not

costs at trial. Likewise, they are entitled to their fees and costs generated on appeal. *See Reeves v. McClain,* 56 Wn. App. 301, 311, 783 P.2d 606 (1989) ("[a] contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal").

In sum, we reverse the order of partial summary judgment and the final judgment. The case is remanded with instructions to the trial court to enter summary judgment in favor of the Thomases and to determine the Thomases' reasonable attorney fees and costs at trial and on appeal.

WEBSTER, A.C.J., and COLEMAN, J., concur.

---

taxable by statute, and attorneys' fees incurred by any party, in such manner as the Court determines to be just and equitable."

