[No. 36146. Department Two. June 27, 1963.]

LESTER G. CAMERON *et al., Appellants,* v. LILA BOONE, *Individually and as Executrix, Respondent.**

* Reported in 383 P. (2d) 277.

*Stuart K. Nielsen*, for appellants.

*Ogden & Ogden*, for respondent.

DAWSON, J.†—An automobile driven by Benjamin E. Boone collided with the rear of a car driven by Lester G. Cameron, plaintiff. Mr. Boone died before trial from causes not arising from the collision.

Mr. Boone's widow, individually and as executrix of his estate, was substituted as defendant. Issues of negligence and contributory negligence, among others, were tried to a jury. Plaintiff appeals from a judgment of dismissal entered after a jury verdict for defendant.

The following undisputed facts are gleaned from a record somewhat devoid of detail. June 12, 1959, appellant drove his automobile in an easterly direction on Bothell Way, in the unincorporated portion of King County known as Kenmore. He passed the Kirkland intersection where a traffic control signal was in operation, and proceeded on the straight, hard-surfaced, four-lane highway, in the inner lane, until he brought his car to a stop several hundred feet beyond the intersection, intending (after the heavy traffic proceeding west cleared) to make a left turn in mid-block across a double center line and into a private driveway on the north side of the highway. The center lines were less than 4 inches apart. While stopped and waiting for an opportunity to make the turn, a vehicle approached appellant from the rear, and passed in the right lane. Shortly thereafter, his car was struck by the Boone vehicle. Whether the car which passed appellant interfered with Mr. Boone's ability to see appellant's car is not known. Skid marks indicated that Mr. Boone had applied brakes at least 25 feet before the impact. There is no testimony as to the speed of the Boone car, none as to weather conditions, and none as to the volume of traffic proceeding

† Judge Dawson is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

east at the time of the accident. No witness saw the collision.

Appellant makes 11 assignments of error. Several are so interrelated that they will not be segregated. In view of our decision, consideration of three of them would be academic and serve no useful purpose.

Three assignments relate to RCW 46.60.020, which restricts vehicular traffic over or across two parallel barrier stripes dividing any four-lane highway. Appellant urges that two instructions given on this issue constitute error; that a directed verdict for appellant was justified because there was a failure to prove contributory negligence.

■ It is argued that because the barrier stripes were painted by a local authority before its passage, and no local intention is shown to come within its purview, RCW 46.60-.020 is not applicable. The fallacy in this argument is that the legislature expressly defined the standard of care and made the standard applicable to all four-lane highways, so divided. RCW 46.60.020. Under its terms, its force is not a matter of local intention, but the act is a complete, self-executing exercise of police power by the state.

Further, it is argued that the statute is inapplicable because the barrier stripes were less than 4 inches apart.

■ *Phillips v. Richmond*, 59 Wn. (2d) 571, 580, 369 P. (2d) 299, is in point on this issue. The pertinent and controlling language follows:

" . . . There is no evidence that at the time appellant attempted his left turn he was aware that the distance between the painted stripes was less than four inches and that he acted on the theory that he could legally make a left turn for that reason. Furthermore, the manner of painting the stripes was described in detail by the employees of the state highway department, who testified that the apparatus used properly spaced the distance between the stripes, but that in repainting them on the highway the precise location did not conform exactly with the old stripes. The jury could have properly found from the evidence that the double line so closely resembled a statutory barrier that a reasonably prudent man would have treated it as such. Furthermore, even if he knew at the time he attempted to make his left turn that the stripes were less

than four inches apart, and for that reason believed that it was not illegal to turn left at that point, the jury could have properly found that a reasonably prudent driver still should reckon with the possibility that other drivers on the highway would regard the double line as a traffic barrier, so that they would not expect anyone to stop and make a left turn at that point. In that case, such a driver should have decided not to attempt a left turn, because of the danger involved.

"The foregoing has demonstrated that the existence of a statute defining traffic barriers is relevant to the issue of whether appellant was contributorily negligent, even if the painted stripes in this case did not meet the statutory requirements. Therefore, an instruction on the statute was necessary and proper."

This rule is controlling. Patently, the instructions were necessary; the issue of contributory negligence was for the jury, not the court.

Another assignment of error also bears on the issue of contributory negligence. It relates specifically to instruction No. 10, which we set out:

"The laws of the State of Washington provide: 'A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning or during a period of time not less than that time required to traverse a distance in feet equal to five times the maximum speed in miles per hour allowed by law during the approach to the point of turning or stopping.' "

In taking exceptions, the following colloquy ensued:

" . . . There isn't any issue that if a hand signal was given it was given for an adequate length of time, therefore, can only confuse the jury. It doesn't give any definitions of the —. THE COURT: You asked for that. MR. NIELSEN: Yes, but evidence has changed a little bit during the trial. I think it is a bit confusing and isn't too helpful."

Appellant should have more clearly expressed his intention to withdraw the proposed instruction. However, the instruction was not prejudicial. It precluded speculation by the jury as to the measure of appellant's duty. As the evidence, which was uncontroverted, supported a finding of full compliance by appellant with this duty, and none

other, it is difficult to conceive of confusion. Respondent's duties in the premises were fully defined by instruction No. 6, which told the jury that one is charged with the duty of seeing those objects or persons which he would have seen had he been exercising reasonable care; by instruction No. 15, which defined the primary duty of avoiding a collision as resting upon the following driver; and by instruction No. 16, which contained the elements of the humanitarian doctrine of last clear chance. There is no claim that improper argument distorted the instructions given. The jury could not have been misled. Perhaps instruction No. 10 was unnecessary, but it was harmless.

Error is also assigned to the court's refusal to permit inquiry as to drinking by Mr. Boone before the accident. The following pertinent colloquy is taken out of context, and includes the only offer of proof on the issue of drinking:

"MR. OGDEN: . . . I am at this time requesting the court to instruct counsel not to pursue that line which relates to any question of drinking on the part of the deceased. . . . MR. NIELSEN: . . . Your Honor misconstrued it. We are not claiming the Defendant was drunk. . . . THE COURT: It is immaterial. We might as well understand each other. If I am in error you may have your remedy, but you will not bring the liquor in, under your last statement. . . . Would you mind advising me how you intend to bring this drinking out? Is it going to be someone who saw him take a drink, or is it going to be brought out by hearsay testimony? MR. NIELSEN: Only by one party at the scene of the accident that actually talked with him and said the man had some liquor on his breath and admitted having had a drink. . . . THE COURT: The only question in my mind, from the statement made by Mr. Nielsen in chambers and made by him now, whether or not that one drink is material; I don't believe it is. . . . MR. NIELSEN: . . . *I don't know what this man is going to say, but I think if he can answer the question, and given the opportunity properly, I think he should be entitled to it. We do not say the man was intoxicated.*" (Italics ours.)

The witness referred to was Officer Don Graybill, who, before he testified, was admonished by the court: "The court has eliminated liquor from this case, officer." A portion of the officer's testimony follows:

"Q. Did you notice the condition of Mr. Boone after the accident? A. I talked to Mr. Boone. Q. And what was his condition that you noted? A. I felt that he was greatly excited. Q. Was he in any condition to drive after the accident? A. I did not feel that he should, no. Q. Why would that be? You can answer that. A. Mr. Boone was considerably—an elderly person. I felt that the accident had excited him considerably, and I didn't feel that it would be safe for him to drive any vehicle, and I didn't feel that his vehicle was driveable, so I personally took him home."

Appellant argues "What a different effect on the jury had the officer been permitted to answer as respondents' counsel knew he would, that defendant-driver was in no condition to drive because of his age (83 years), eyesight and drinking combined."

There is no formula for determining in all cases when one is or is not under the influence of or affected by intoxicating liquor. Ordinarily, the question is one of fact to be determined by the jury. Whether Officer Graybill would have made a prima facie showing had he not been admonished, we can neither divine nor surmise. However, it can be said, categorically, that evidence of one drink of whisky, volume undisclosed, if submitted to the jury, would result in speculation and prejudice. Some quantum of additional proof was necessary to raise a jury question. *Shaw v. Browning*, 59 Wn. (2d) 133, 367 P. (2d) 17; *White v. Peters*, 52 Wn. (2d) 824, 329 P. (2d) 471; *Wood v. Myers*, 48 Wn. (2d) 746, 296 P. (2d) 525. No offer of proof has supplied this omission.

The rule that requires an offer of proof supports two basic purposes. The first is a fully informed court. *Tomlinson v. Bean*, 26 Wn. (2d) 354, 173 P. (2d) 972. In the case at bar, the court was informed that the extent of the testimony on drinking was not known to appellant. Before the court could review, revaluate, and, in its discretion, perhaps revise, its prior ruling, it was necessary that the issue have more substance than an uncharted fishing expedition. Without an offer of proof, the court could not rule otherwise than it did.

The second purpose of an offer is to save the point on appeal. There is no record from which we may infer that appellant could have substantiated the issue of drinking. The assignment, therefore, is without merit.

The three following assignments were argued without segregation, and we will not vary the procedure:

"I. The refusal of appellant's motion to strike pleadings of respondents for failure to answer interrogatories as required by court order, or grant any relief therefor. II. Refusal of the court to allow the consideration of disclosures as Answers to Interrogatories. III. The refusal to permit the reading of Answers to Interrogatories to the jury."

The facts are that on August 18, 1960, Mr. Boone was given 10 days within which to answer the majority of 64 interrogatories which had been directed to him (a number had been stricken by the court). He died November 3, 1960, without having complied. These were ultimately answered by Lila Boone, surviving spouse, but, when thus answered, 27 of the answers were "Not known" or "Don't know," and, obviously, do not attain the dignity of probative testimony. None of her answers was pertinent on the issue of liability, and no purpose would have been served in permitting counsel to read them to the jury, even though we sympathize with appellant's Socratic statement: "Is a party to hide available evidence and falsely answer interrogatories ordered answered by the court and benefit from such conduct? The proceedings in this case would indicate so."

In *United States v. Continental Cas. Co.*, 303 F. (2d) 91, the federal court said:

". . . A party to an action has the right to have the benefits of discovery procedure promptly, not only in order that he may have ample time to prepare his case before scheduled trial, but also in order to bring to light facts which may entitle him to summary judgment or induce settlement prior to trial."

We are fully aware that benefits inure when the obligation to disclose is promptly met, and these may be dissipated and substantial rights lost by procrastination. Therefore, a court should not hesitate to impose sanctions under proper circumstances. However, during trial, in the

absence of sanction, we know of no general principle which permits the disregard of the laws of evidence.

 Mrs. Boone's failure to answer interrogatories is laid in the fluid area of exceptions to the hearsay rule. The basic rule precludes testimony of a witness when sourced, not upon personal knowledge, but in the verbal or written word of another. 5 Wigmore on Evidence (3d ed.) § 1364. Among its numerous, sharply defined exceptions, there is none which admits every statement of a deceased person, even though made *ante litem motam*. Without statutory implementation, the admission of such statements, particularly those dealing with past events, is sharply circumscribed. Thus, without judicial guidance, Mrs. Boone was under no duty to determine what answers, if any, as a matter of law, could have been based upon hearsay statements of her deceased husband.

Mr. Boone in his life signed one or more written reports. None was formally offered in evidence; thus, we are uninformed as to general contents of such reports. It is true that admissions against interest, if material to the issues, may become admissible as exceptions to the hearsay rule. Wigmore, *supra,* § 1456. But no offer was made. After a careful reading of the record, it is our impression that appellant regarded the reports as the source of information from which the surviving spouse could and should have answered certain interrogatories more responsively.

Rule of Pleading, Practice and Procedure 37 (d) provides as follows:

"If a party or an officer or managing agent of a party *wilfully fails* to appear before the officer who is to take his deposition, after being served with a proper notice, *or fails* to serve answers to interrogatories submitted under Rule 33, after proper service of such interrogatories, the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party." (Italics ours.)

 Appellant apparently did not seek the admission of pertinent disclosures in the reports as a sanction, or order nisi, under Rule 37 (d), which might have been a practical

approach to his problem, as a pretrial procedure, but he assigns error to the court's failure to strike respondent's pleadings. This is an extreme penalty and is sharply distinguished by the courts from an order impelling compliance, because rights must be safeguarded under the fifth amendment of the United States Constitution. *Mitchell v. Watson*, 58 Wn. (2d) 206, 361 P. (2d) 744.

We, therefore, construe the rule to mean, that to come within the purview of the extreme penalty in Rule 37(d), a failure to answer interrogatories must be a *wilful* failure. In accord are: *Cardox Corp. v. Olin Mathieson Chemical Corp.*, 23 F.R.D. 27; *United States v. Continental Cas. Co.*, *supra*; 4 Moore's Federal Practice (2d ed.) § 33.28, note 2; 2A Barron & Holtzoff, Federal Practice and Procedure, § 855.

In view of this construction, we cannot predicate error upon the trial court's action, unless we can determine that Mr. Boone's failure to answer interrogatories was a wilful failure. From the record, it is impossible to so determine. It was due to contumacy or a condition *in extremis*, depending upon which *ipse dixit* of counsel is correct. On February 7, 1961, the motion to strike respondent's pleadings and enter judgment by default was denied. In the absence of a showing to the contrary, we must presume this order was well founded.

We, therefore, conclude that, under the facts in the case and the instructions given, the jury could have determined that the contributory negligence of appellant was a proximate cause of the accident, and that respondent neither saw appellant's peril nor, by the exercise of reasonable care, could have seen it in time to have avoided the accident by the exercise of reasonable care.

Finding no reversible error, the judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY and WEAVER, JJ., concur.

---

August 29, 1963. Petition for rehearing denied.