[No. 1243-2.    Division Two.    April 2, 1976.]

ASSOCIATED MORTGAGE INVESTORS, *Respondent*, v. G. P. KENT CONSTRUCTION CO., INC., ET AL, *Appellants*, SPARKMAN & MCLEAN COMPANY, ET AL, *Respondents*.

*Philip P. Malone*, for appellants.

*John H. Strasburger* (of *Short, Cressman & Cable*), for respondent.

PEARSON, J.—Defendants appeal from the entry of a default judgment and an order refusing to vacate the judgment. The order of default was entered shortly before trial on the merits of plaintiff's action against defendants seeking to foreclose a deed of trust.[1] The order recites that

---

[1] Other defendants in the suit are various lienholders or other persons having potential claims to the land subject to the foreclosure.

defendants failed to comply with an earlier discovery order requiring them to fully answer plaintiff's written interrogatories and pay costs of $300 on or before noon, September 26, 1973.

The sole issue on appeal is whether or not the trial court properly exercised its discretion under CR 37 in imposing a default judgment sanction against defendants for refusal to comply with a discovery order, or whether that sanction was so severe as to constitute either an abuse of discretion or a deprivation of defendants' constitutional rights. For the reasons stated below, we believe the judgment should be affirmed.

Plaintiff's action to foreclose the deed of trust against the defendants also sought a deficiency judgment against G. P. Kent Construction Company and its two personal guarantors, the defendants Gregg P. Kent and Margaret G. Kent.

The underlying transaction was a loan agreement which was executed by the corporate and individual defendants in favor of Sparkman and McLean Company. The loan agreement was evidenced by a negotiable note and secured by the above-mentioned deed of trust covering land owned by the corporate defendant. The loan agreement required the lender to disburse funds upon a fixed construction schedule, which was triggered by the defendants' request. The purpose of the loan was to enable defendant, G. P. Kent Construction Company, to develop its land into residential home sites.

The three documents were executed in July 1969. Almost immediately the note was negotiated and the deed of trust assigned to plaintiff, who, by virtue of those acts, became the secured lender.[2] The documents also demonstrate that the principal borrower was G. P. Kent Construction Company, and Gregg P. Kent and Margaret Kent were personal guarantors on the note and deed of trust.

Plaintiff's amended complaint, filed July 2, 1973, alleged

[2]This factual recitation is taken from instruments attached to the pleadings of the parties. However, the pleadings do not dispute the accuracy of those recitals to this point.

the secured note to be in default in the principal sum of $254,773.04, together with 8 percent interest per annum from February 28, 1971. (The maturity date on the note was January 2, 1971.) The complaint requested a decree of foreclosure, deficiency judgment after foreclosure sale, costs, and attorney's fees.

Defendants' answer was in the nature of a general denial of any delinquency on their part. In addition, defendants asserted the following matters as affirmative defenses or in support of a $141,022 counterclaim against plaintiff: (1) that torrential rains (an act of God) forced the "total and prolonged cessation of construction activities" and temporarily prevented them from timely performance; (2) that plaintiff consented to extensions of time under the loan agreement; (3) that in violation of the extension agreement plaintiff wrongfully refused to advance funds ($102,044.96) after the loan's maturity date; and (4) that part of the delay in performance was occasioned by plaintiff's delay in finalizing the agreements. The individual defendants also alleged they had signed the personal guaranties under duress. This answer was filed April 17, 1973, almost 9½ months after the amended complaint was filed.[3]

On June 25, 1973, plaintiff served on defendants and filed written interrogatories designed to ascertain what evidence defendants had to support the above-mentioned allegations of their answer and counterclaim. No timely objections or answers were made to these interrogatories. Partial and incomplete answers were furnished some 6 weeks later (August 6, 1973). At that time the trial date was less than 2 months away (October 2, 1973). Plaintiff then filed a motion which sought to require complete answers to be filed by September 14, 1973, and upon failure to comply, the motion requested an order adjudging defendants to be in default. The motion also sought attorney's fees as terms. This motion was heard by the trial court on September 13,

---

[3]Plaintiff claims this delay was caused by defendants, who filed actions in both state and federal courts, seeking to stay plaintiff's foreclosure action.

1973, and resulted in an order dated September 14, 1973. This order required defendants to file full and complete answers to plaintiff's interrogatories prior to September 21, 1973, to the extent of their present ability to do so. The order also required defendants to pay $300 on or before September 21, 1973. Finally the order provided:

> ORDERED that in the event that said defendants fail to comply with the terms of this Order on or before September 21, 1973, plaintiff shall be entitled to move for an Order of Default to be heard on the regular motion calendar at 9:30 a.m. on September 24, 1973.

Defendants failed to comply with this order and a hearing on plaintiff's motion for default was held by the court on September 24, 1973. This hearing resulted in an oral order requiring defendants to file the requisite answers and pay $300 attorney's fees to plaintiff by noon, September 26. The court tentatively scheduled a hearing at 1:30 p.m., September 26, 1973, and indicated its intention to order a default if defendants failed to meet the noon deadline.

The record shows that the deadline was not met. However, plaintiff's counsel orally agreed with defense counsel to delay entering the default for 1 day upon defense counsel's assurance that the supplemental answers would be provided by the end of the day (September 26, 1973).

It developed that unverified supplemental answers to the interrogatories were served on plaintiff's counsel on the afternoon of September 26. Believing those answers to be evasive and incomplete, plaintiff's counsel formally notified defendants' counsel on the morning of September 27, 1973, that he would present an order of default to the trial court at 1:30 p.m. the same day. The proposed order was in fact entered at 1:30 p.m. on that date, with no attorney appearing for the defendants. Subsequently, the default judgment was entered on October 1, 1973. On October 19, 1973, after a hearing, the court entered an order refusing to set aside the default judgment.[4]

---

. [4]It appears that the $300 attorney's fee was paid on September 28, 1973.

We have reviewed the answers and supplemental answers to the interrogatories. We agree that many of them are so vague or incomplete as to render it difficult, if not impossible, for plaintiff to properly prepare for trial on most of the issues raised by the answer and counterclaim.[5] Therefore, we reject defendant's contention that the court's orders of September 14 and 24, 1973, were substantially satisfied.

On appeal, defendants do not urge that the answers or supplemental answers to the interrogatories were complete or that the interrogatories were not material, nor does any satisfactory explanation appear—either in the record, in the briefs, or in oral argument—as to why complete answers were not made.

Rather, defendants argue, (1) the sanctions were unjust as a matter of law, and lesser sanctions authorized by CR 37 would have been sufficient; (2) there was no deliberate and willful refusal to make discovery, so as to justify an order of default; (3) the default judgment was an unconstitutional deprivation of defendants' property without due process of law; and (4) even if the default judgment was justified, it should have been vacated because the October 2, 1973, trial date was subsequently continued by the court to mid-December 1973.

We address the constitutional question first. It seems clear that there is a constitutional due process limitation to grant of a default judgment as a contempt sanction imposed for violation of a discovery order. *See Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257 (9th Cir. 1964), *cert. denied*, 380 U.S. 956, 13 L. Ed. 2d 972, 85 S. Ct. 1081 (1965). However, this limitation is not applicable in this case.

■ The issue of due process is involved if the sanction is imposed against a defendant as a summary punishment for contempt in refusal to obey the court's discovery order. *Mitchell v. Watson*, 58 Wn.2d 206, 361 P.2d 744 (1961);

---

[5]The defects in the answers and supplemental answers to interrogatories are accurately described in plaintiff's brief. These defects are numerous, material, and substantial.

*Lawson v. Black Diamond Coal Mining Co.*, 44 Wash. 26, 86 P. 1120 (1906); *Hovey v. Elliott*, 167 U.S. 409, 42 L. Ed. 215, 17 S. Ct. 841 (1897). But it is not a denial of due process where the order setting forth the prospective sanction is made for the purpose of compelling discovery and where defendant is allowed a reasonable time to comply with the order. *Unger v. Los Angeles Transit Lines*, 180 Cal. App. 2d 172, 5 Cal. Rptr. 71 (1960). The rationale is that due process is secured by a presumption that the refusal to produce evidence material to the administration of justice is an admission of the absence of any merit in the asserted defenses. *See Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 174 A.2d 768 (1961); *Peitzman v. Illmo*, 141 F.2d 956 (8th Cir. 1944), *cert. denied*, 323 U.S. 718, 89 L. Ed. 577, 65 S. Ct. 47 (1944); *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 53 L. Ed. 530, 29 S. Ct. 370 (1909); *Lawson v. Black Diamond Coal Mining Co., supra.*

In the case at bench, the key order of September 14, 1973, which granted plaintiff the right to pursue a remedy of default, allowed defendants 1 week to furnish complete answers to the interrogatories. This time limit was subsequently extended to September 26, 1973. There is no claim that the time was unreasonably short, and no such contention could be made in view of the time already afforded. There is no explanation as to why the order was not complied with, and no attempt to remedy the defective answers at any time prior to or subsequent to the hearing on October 19, 1973, at which defendants sought to set aside the default judgment. We conclude that the default did not violate defendants' constitutional rights.

▉ Second, we consider the contention that there was no deliberate and willful refusal to make discovery which would justify the harsh sanction imposed. We agree with defendants that the sanction of a default judgment authorized by CR 37(b)(2)(C) is a harsh remedy, which should only be granted where there has been a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for

trial. *See Kagele v. Frederick*, 43 Wn.2d 410, 261 P.2d 699 (1953); *Cameron v. Boone*, 62 Wn.2d 420, 383 P.2d 277 (1963).

But the unexplained failure to furnish complete and meaningful answers to these material interrogatories in the face of the court's order impels a conclusion that the refusal was willful. *See Petersen v. Vallejo*, 259 Cal. App. 2d 757, 66 Cal. Rptr. 776 (1968). In this connection we note that CR 37(a)(3) allows the court to treat an evasive or incomplete answer as a "failure to answer." In our opinion, any violation of an explicit court order without reasonable excuse or justification must be deemed a willful act. *See Lowry v. Moore*, 16 Wash. 476, 48 P. 238 (1897).

We next turn to the contention that the sanction was unjust in that other less drastic alternatives to default would have been sufficient. Cases are legion holding that the choice of sanctions for violation of a discovery order is discretionary and that the particular facts and circumstances of each case will determine whether the discretion has been abused. *See* Annot., 6 A.L.R.3d 713 (1966); Annot., 56 A.L.R.3d 1109 (1974). In this state CR 37 vests broad discretion in the trial court as to choice of sanctions. A discretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons. *Reid Sand & Gravel, Inc. v. Bellevue Props.*, 7 Wn. App. 701, 705, 502 P.2d 480 (1972).

There are many factors present in this case which support a conclusion that an order threatening default if proper answers were not forthcoming within a week was the only sanction which would compel discovery and avert the requirement that plaintiff seek a continuance of the trial. Those factors are (1) the long delay caused by defendants' failure to answer the amended complaint; (2) the relatively long delay caused by defendants' failure to make

timely answers to the interrogatories; (3) the evasive and incomplete nature of those answers; (4) the materiality of those answers to a proper preparation for the trial; (5) the fact that the interrogatories sought information which was primarily within defendants' knowledge and control; (6) the proximity of the trial date and the effect those answers might have with reference to plaintiff's action against other parties to the suit; and (7) the nature of the action, *i.e.*, a suit to foreclose a trust deed on land which was subject to other lien claims arising out of the work for which plaintiff's loans had been made.

This is not a case where the discovery order and the incomplete answers affected only one or two issues or the immediate parties; nor is it one in which a lesser penalty would have given plaintiff adequate protection. Since plaintiff concededly loaned defendants money, as evidenced by a secured note, and since those monies or the interest were concededly not paid on maturity of the note, plaintiff's trial preparation necessarily centered around discovering the merits, if any, of the claimed affirmative defenses and the counterclaim. The incomplete answers prevented plaintiff from discovering essential facts and evidence pertaining to all these affirmative defenses and the counterclaim. Consequently, any penalty short of a threatened default would in all probability have been ineffective. We find no manifest abuse of discretion.

Further, we do not find an abuse of discretion in the refusal of the trial court to vacate the default judgment. Defendants did not offer proper answers to the interrogatories at any time, or explain or justify their refusal to comply with the earlier order. Such matters would, in our view, be a prerequisite to establishing an abuse of discretion. Nor are we persuaded by the fact that the trial date was continued to mid-December 1973, and this fact was known to the trial court at the time it ruled on the motion to vacate the default judgment. That continuance involved

other parties. The record is totally silent as to why it was granted.

Judgment affirmed.

PETRIE, C.J., and REED, J., concur.

Petition for rehearing denied May 18, 1976.

Review denied by Supreme Court August 31, 1976.