IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JAMES HENRY ESKRIDGE, II & | ) | No. 30405-1-III |
| AMY DAWN ESKRIDGE, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DARLENE A. TOWNSEND, PhD, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — James and Amy Eskridge filed a negligence suit against Darlene Townsend, PhD, a marriage and family therapist, alleging that she violated the standard of care in her counseling of them. Part of their claim included communications by Dr. Townsend to Child Protective Services (CPS), the Washington State Bar Association (WSBA), the Spokane Police Department, and the Department of Health (DOH). Three days before trial in a reply brief, Dr. Townsend raised an immunity defense under RCW 4.24.510, the anti-SLAPP[1] statute, asserting that the statute covered all of these communications. The trial court ruled that Dr. Townsend waived the defense because she

---

[1] Strategic Lawsuit Against Public Participation.

failed to raise it during two years of litigation. The jury returned a verdict in favor the Eskridges. Dr. Townsend appeals, contending the trial court erred in (1) concluding that she waived the anti-SLAPP defense and (2) allowing hearsay testimony. She also alleges instructional error. We agree with the trial court that Dr. Townsend waived the anti-SLAPP defense, that the hearsay was properly admitted, and we conclude that the instructional error was not objected to and is not properly before this court. Accordingly, we affirm.

## FACTS

Mr. Eskridge began therapy as Dr. Townsend's individual client in August 2006 for follow-up care after inpatient treatment for alcohol dependency and depression. After a few appointments, Dr. Townsend requested that Ms. Eskridge also begin separate, individual counseling with her. Within a few weeks of this parallel individual therapy, Dr. Townsend concluded that Mr. Eskridge was a sex addict. She claimed that Mr. Eskridge's sexual issues were a predominant theme "in . . . almost every [counseling] session." Report of Proceedings (RP) at 244. But when she reviewed her notes she agreed that sex or intimacy issues were referenced in only about five of their sessions.

Dr. Townsend also admitted the need to use great care in diagnosing sex addiction, using standardized screening instruments and diagnostic criteria. She testified that

2

"[e]very patient that comes in with a sexual addiction statement of need" is given 10 screening questions and a 30-page document to fill out. RP at 225. Dr. Townsend admitted administering none of those tests to Mr. Eskridge prior to her reaching her conclusion that he was a sex addict.

Dr. Townsend agreed that the standard of care required her not to disclose patient confidences without express written authorization or waiver. Dr. Townsend admitted that she disclosed to Ms. Eskridge that Mr. Eskridge could not accept "his sexual addiction diagnosis." RP at 241. Dr. Townsend did not have Mr. Eskridge's permission to disclose those opinions.

In other private sessions with Ms. Eskridge, Dr. Townsend disclosed additional confidences learned from Mr. Eskridge in his therapy, including Mr. Eskridge's frustrations over Ms. Eskridge's work schedule. Dr. Townsend told Ms. Eskridge that she had concluded that Mr. Eskridge was not doing enough to recover from alcohol dependency, and that his current Alcoholics Anonymous sponsor was too much like Mr. Eskridge's father and needed to be replaced. Ms. Eskridge would return home from these sessions and confront Mr. Eskridge with the information she obtained from Dr. Townsend. This would cause Mr. Eskridge to get extremely frustrated.

3

Dr. Townsend presided over a couple of joint counseling sessions with Mr. and Ms. Eskridge. Dr. Townsend admitted the standard of care required she maintain individual confidentiality during group and couple's counseling, absent express written permission for disclosure. During one joint session, Dr. Townsend turned to Ms. Eskridge and disclosed her opinion that Mr. Eskridge had borderline personality disorder. Dr. Townsend testified that she had not received Mr. Eskridge's consent to disclose such an opinion.

Ms. Eskridge testified that several months into counseling, Dr. Townsend told her that her husband needed intensive in-patient treatment for sex addicts in Mississippi. Ms. Eskridge testified that Dr. Townsend instructed her to tell Mr. Eskridge that the program was for depression and to hide the sexual addiction component because he would probably not go. Mr. Eskridge said that he would go but later learned the nature of the program during a preadmission telephone interview with the facility.

Mr. Eskridge testified that on July 30, 2007, he confronted Dr. Townsend about her disclosures. Mr. Eskridge told Dr. Townsend that he wanted to terminate therapy. But she told him that she would terminate counseling the Eskridges' two sons. Mr. Eskridge said he agreed to continue making appointments, but he would no longer engage in substantive discussions with Dr. Townsend.

4

*Reports to CPS*

One month later, Dr. Townsend reported the Eskridges to CPS. At trial, Dr. Townsend testified her CPS report was based on statements Mr. Eskridge made in a counseling session on July 30, 2007. Dr. Townsend's chart notes reflected:

> He says he just loves his boys so much and misses Amy so much that he's feeling lonely. Says the nights are difficult in missing Amy so he has begun crawling into beds with the boys and just holding then close. Says they wake up and ask [him] what is wrong. I expressed concern over this inappropriate substitution of the boys for Amy, but he protests that it's okay because he loves them so much.

RP at 243.

Dr. Townsend said that this statement immediately convinced her that Mr. Eskridge was sexually molesting his children and that she was required to report to CPS. Dr. Townsend testified she waited one month to make a report to CPS because Ms. Eskridge would be out of town that entire month and the boys needed her when the report was made. Dr. Townsend waited even though this possibly meant exposing the boys to more sexual abuse during that time.

Dr. Townsend agreed to see Ms. Eskridge on August 29, 2007, and told her that day that she was reporting Mr. Eskridge to CPS. Dr. Townsend explained that rules of confidentiality prevented her from disclosing reasons for the report but she did state, "nothing happened with their clothes off." RP at 120.

5

*Testimony of CPS Investigator Denise Guffin*

Ms. Guffin, a CPS investigator, testified regarding her investigation of Dr. Townsend's complaint to CPS. She testified that she had investigated more than 400 separate reports for CPS and that she held a master's degree in social work. She described the steps she followed under CPS procedure.

Ms. Guffin testified that Dr. Townsend reported to CPS "that the children are terrified of the father," and that Mr. Eskridge had reported to her (Dr. Townsend) "spanking the children," "hit[ting] the kids and throw[ing] them in the room for the afternoon." RP at 596. Dr. Townsend reported that she was concerned for the boys because the dad was a stay-at-home dad with the mother traveling and often gone for a week at a time. Ms. Guffin testified that Dr. Townsend reported "that [J.E.] told her that dad spanked him so much he was bleeding," and that the boys had told her that a long time ago one of the boys "was trying to get away from dad's spanking and dad hit him in the head and it required stitches." RP at 596. Ms. Guffin also testified that Dr. Townsend reported that Mr. Eskridge was a "sex addict." RP at 597.

Dr. Townsend told the CPS intake person that Mr. Eskridge "is a dry alcoholic and a sex addict." RP at 597. Ms. Guffin contacted the Eskridge children's elementary school and arranged with school officials to interview the children there. Both sons said

6

they were not afraid of their father. Ms. Guffin then made an unannounced visit of the Eskridge home, bedrooms and other areas. During that visit, the Eskridges explained that their youngest son, who was in kindergarten at the time, often got into bed with both of them due to breathing problems.

Ms. Guffin testified that during one of several lengthy conversations, Dr. Townsend acknowledged that Mr. Eskridge "'didn't tell me that he was doing fondling, but I can't imagine he isn't.'" RP at 627-28. Dr. Townsend also reported that Mr. Eskridge was holding his sons "with a full body hug" and "then [Dr. Townsend] said to me, '[t]his is getting close to molestation.'" RP at 617.

Ms. Guffin testified in response to a question from defense counsel that, "after a complete investigation, I found the allegations to be unfounded." RP at 648. Ms. Guffin continued that: "I do not believe, based on my professional investigation and my professional opinion, that Dr. Townsend was concerned enough to report these allegations." RP at 649.

### *Reports to Third Parties*

After CPS deemed Dr. Townsend's report unfounded, Dr. Townsend wrote a letter to the Eskridges' insurance company informing them that she was required to report Mr.

7

Eskridge to CPS "'based on his description of the manner in which he was sexually molesting his children.'" RP at 294, Ex. 7.

The Eskridges retained Mr. Eskridge's brother, an attorney, for legal assistance. Dr. Townsend filed a grievance with the WSBA, alleging it was a conflict of interest for an attorney to represent his own brother. In correspondence to the WSBA in June 2008, months after her report to CPS had been deemed unfounded, Dr. Townsend wrote the following about Mr. Eskridge, "'I was required to report to DSHS Child Protective Services the fact that Mr. James Eskridge had described to me, in clear detail, the methods by which he was sexually molesting the two young sons of Amy and James.'" RP at 294, Ex. 6.

Dr. Townsend also sent correspondence to the Spokane Police Department in which she described Mr. Eskridge as "'an alcoholic sex addict with severe anger management problems, [who] had described to me his sexual abuse of his two sons.'" RP at 293, Ex. 5.

The Eskridges filed a complaint with the Washington DOH. Dr. Townsend wrote that Mr. Eskridge "has previously informed [me] that he has sexually molested [his] sons." RP at 292, Ex. 4.

8

The Eskridges separated in late 2010 and divorced in 2011. Their expert, Dr. Jon Conte, testified that Dr. Townsend did not meet the standard of care and that her "misdiagnosis and the application of wrong therapeutic errors . . . is the proximate cause for the destruction of their marriage." RP at 435. As to Dr. Townsend's CPS report, he testified, "I don't think any reasonable professional would believe that a father who is hugging a child is sexually aggressive or is sexually dangerous." RP at 424-25. Dr. Conte further testified that both Mr. and Ms. Eskridge suffered additional psychological harm such as distrust, anxiety, anger, and frustration as a result of Dr. Townsend's standard of care violation.

## PROCEDURAL FACTS

The Eskridges filed a health care malpractice suit on June 5, 2009. In their amended complaint filed on November 16, 2009, they detailed the first four medical malpractice claims, alleging breach of the standard of care based on breaches of confidentiality, conflicts of interest, inappropriate expansion of Mr. Eskridge's treatment for sexual addiction, failure to properly terminate treatment in a professional way, and filing a retaliatory complaint with CPS. The fifth through eighth counts alleged Dr. Townsend improperly withheld records from the Eskridges, improper billing, violation of the Consumer Protection Act, chapter 19.86 RCW, and defamation and slander based on

9

Dr. Townsend's communications with CPS and the WSBA. Dr. Townsend's answer asserted "statutory immunity for the acts and omissions alleged within the Complaint." Clerk's Papers (CP) at 160.

On December 17, 2010, the trial court granted Dr. Townsend's motion for summary judgment as to claims five through eight, finding the claims "subsumed in RCW 7.70 and that the Consumer Protection Act is not available for plaintiffs alleging personal injuries due to medical negligence." CP at 11.

Thereafter, the Eskridges asked Dr. Townsend for clarification regarding her immunity defense:

> With regard to your claim that you have immunity for the acts complained of by Plaintiffs in their Amended Complaint, please identify any and all such acts for which you contend immunity applies, and please identify and describe each material fact which you contend supports your claim of immunity.

CP at 52.

Dr. Townsend responded:

> Pursuant to various state statutes, Dr. Townsend is immune from civil liability for making her good faith report to Child Protective Services which was required by law. See RCW 26.44.060.[2]

---

[2] RCW 26.44.060(1)(a) provides, in part:
[A]ny person participating in good faith in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding shall in doing so be immune from any liability arising out of

No. 30405-1-III
*Eskridge v. Townsend*

CP at 52.

The Eskridges then asked Dr. Townsend to provide copies of all documents pertaining to her answer. She responded, "See RCW 26.44.060." CP at 53.

On a Friday afternoon, three days before trial was scheduled to begin the following Monday, Dr. Townsend claimed immunity under the anti-SLAPP statute, RCW 4.24.510,[3] in a reply brief. She asserted that all of her communications, with the exception of the insurance company, were covered by the statute as they were all to branches of government or agencies of the local government. On the morning of trial, the Eskridges moved the court for an order precluding Dr. Townsend from invoking the anti-SLAPP statute, contending that she had waived the defense due to her failure over months of litigation to assert it. They also argued that the defense did not apply to claims involving reporting to CPS because reports to CPS are governed by RCW 26.44.060, which unlike RCW 4.24.510, require good faith reporting in order to afford immunity.

---

such reporting or testifying under any law of this state or its political subdivisions.

[3] RCW 4.24.510 provides in part:

A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization. . . . Statutory damages may be denied if the court finds that the complaint or information was communicated in bad faith.

11

The trial court concluded that Dr. Townsend waived the defense, noting that she failed to raise the defense during months of litigation, despite multiple opportunities to do so. Alternatively, the court found that the anti-SLAPP statute did not apply to the case, reasoning in part that "the SLAPP statute does not trump, if you will, the good faith reporting requirement of RCW 26.44.030." RP at 973.

The jury found Dr. Townsend negligent in her counseling and treatment of the Eskridges. Dr. Townsend appeals.

## ANALYSIS

*Waiver.* The central issue is whether the trial court erred by striking Dr. Townsend's affirmative defense of immunity under the anti-SLAPP statute, RCW 4.24.510.

A trial court's ruling on a motion to strike an affirmative defense is reviewed for an abuse of discretion. *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 244, 178 P.3d 981 (2008). A trial court abuses its discretion when the ruling is manifestly unreasonable or based upon untenable grounds or reasons. *Veit v. Burlington N. Santa Fe Corp.*, 171 Wn.2d 88, 99, 249 P.3d 607 (2011) (quoting *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010)). A trial court's discretionary ruling is unreasonable or based upon untenable grounds when it is based on an error of law. *Wash.*

12

*State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). This court reviews a trial court's legal conclusions de novo. Likewise, "[a] court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts[;] it is based on untenable grounds if the factual findings are unsupported by the record." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

Washington courts recognize that in certain cases the common law doctrine of waiver will preclude a defendant from raising an affirmative defense. *Lybbert v. Grant County*, 141 Wn.2d 29, 38, 1 P.3d 1124 (2000). Our Supreme Court has held that waiver of affirmative defenses can occur in two ways: if assertion of the defense is inconsistent with the defendant's prior behavior or if the defendant has been dilatory in raising the defense. *Lybbert*, 141 Wn.2d at 38-39; *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002). The doctrine of waiver is "designed to prevent a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage." *King*, 146 Wn.2d at 424 (citing *Lybbert*, 141 Wn.2d at 40). The doctrine is also intended to encourage the assertion of procedural defenses "before any significant expenditures of time and money [have] occurred." *Id.* at 426.

13

Here, the trial court ruled that Dr. Townsend waived the defense based on Dr.

Townsend's failure to assert the defense until just before trial:

> Clearly if at any time initially this issue might not come up, clearly I would think after the deposition on February 24th where some of these documents were used, that that would be notice to the defendant that these are the type of documents that the plaintiff is going to ask that the court to [sic] consider for evidentiary purposes. The interrogatories and requests for production that both counsel submitted clearly are only limited in terms of statutory citation to RCW 26.44. There is a general language about other statutes, but there is no attempt to identify the SLAPP statute[.] It is not identified in any way shape or form that the defense is relying on to exclude various items of evidence.

RP at 971-72.

The court also noted that the defense was not raised at the pretrial meeting or in the

trial management report: "This is the kind of issue I would expect to be a motion on the

applicability of an immunity statute prior to trial and not just in the form of a motion in

limine." RP at 972.

Dr. Townsend contends that the trial court's findings do not support a waiver of

immunity under the anti-SLAPP statute. She claims that at "all relevant times throughout

the litigation," she asserted her statutory immunity. Appellant's Br. at 14. Specifically,

she points to her answers to interrogatories, in which she stated that she was entitled to

statutory immunity based on "various state statutes." CP at 52, 64. She argues that she

was not required to specify the anti-SLAPP statute because the Eskridges' interrogatory

14

"did not ask Dr. Townsend to identify the statutes upon which she founded her claim of immunity." Appellant's Br. at 16.

The Eskridges counter that Dr. Townsend's failure to raise the defense over the course of close to two years of litigation constituted a waiver of anti-SLAPP immunity, pointing out that when asked to specify each "material fact" supporting her claim of immunity, Dr. Townsend simply cited RCW 26.44.060, but failed to identify any facts material to a defense under the anti-SLAPP statute. They contend that her response and actions prior to trial directed them away from all immunity provisions other than RCW 26.44.060, which resulted in the kind of prejudicial unfair surprise that the waiver doctrine is designed to curtail. The Eskridges primarily rely on *Lybbert* and *King* in support of their argument.

In *Lybbert*, the plaintiffs sued Grant County but mistakenly did not effect proper service. For the next nine months, the county appeared and acted as though it was preparing to litigate the merits of the case without mentioning any problem with the sufficiency of the service of process. Through interrogatories, the Lybberts asked the county if service would be an issue. The county did not respond. After the statute of limitations had run, the county answered the Lybberts' complaint and raised the issue of insufficient service. The court reversed, noting that if the county had timely responded to

15

the interrogatories, the Lybberts would have had time to cure the defective service. *Lybbert*, 141 Wn.2d at 42. The court held that the county thus waived its defense by acting in an inconsistent and dilatory manner. *Id.* at 44-45.

Similarly, in *King*, parents filed a complaint against Snohomish County after their child was injured in a county park. One month after the complaint was filed, the county answered and raised 11 affirmative defenses, including failure to comply with claim filing requirements. *King*, 146 Wn.2d at 423. However, during three years of litigation and discovery, which included motions for summary judgment, the defense did not raise the issue of defective notice. When the plaintiffs asked the county in an interrogatory what defenses it intended to raise, the county referred to the list of defenses in its answer. *Id.* The county did not raise the defense again until three days before trial when it moved to dismiss for failure to comply with the notice claim provisions. *Id.* The trial court denied the motion. The Supreme Court affirmed, concluding that although the county was not dilatory in asserting the defense in its answer, all parties to the case had engaged in costly and lengthy discovery and litigation "only to have the case decided on procedural grounds completely unrelated to the discovery in which they were engaged" and that the defense could have been disposed of early in the litigation prior to these expenditures and at a time when the defect could have been remedied. *Id.* at 426.

16

The facts of these cases are similar to the case at hand. As the Eskridges correctly note, Dr. Townsend's behavior during the two years before trial was wholly inconsistent with her assertion of an anti-SLAPP immunity defense. In 2009, in her "Answer and Statement of Affirmative Defenses," Dr. Townsend simply stated that she was "entitled to statutory immunity for the acts and omissions alleged within the Complaint." CP at 160. When asked in January 2011 to identify the "material facts" that supported her general claim of immunity, Dr. Townsend did not cite the anti-SLAPP statute or make any reference to the material facts she would have to establish to support anti-SLAPP immunity (that she had communicated matters to an agency that were reasonably of concern to that agency); instead, she specifically directed the Eskridges to RCW 26.44.060, which she alleged protected her "good faith report to Child Protective Services." CP at 52. And when asked for documents pertaining to her answer, she again referenced RCW 26.44.060 without any mention of the anti-SLAPP statute. Additionally, in 2010, the parties filed a stipulation that "[t]here shall be no restrictions upon the use of the DSHS records . . . for purposes of litigating the . . . matter." CP at 191. This included the CPS report. By entering into an agreement that allowed the unrestricted use of such information, Dr. Townsend acted inconsistently with an assertion of immunity based on such information.

17

The court took special notice of Dr. Townsend's failure to claim SLAPP immunity during her deposition. In her February 2011 deposition, Dr. Townsend was questioned extensively about her communications with the WSBA, the DOH, and CPS; however, she never claimed immunity in reference to those communications under the anti-SLAPP statute. In May 2011, the Eskridges announced that they would be offering evidence at trial of Dr. Townsend's communications with the police, DSHS, and CPS. Dr. Townsend objected under ER 801 and ER 904, but did not raise an immunity defense under the anti-SLAPP statute.

Another fact of particular significance to the court was Dr. Townsend's failure to raise an anti-SLAPP immunity defense in the June 9, 2011 trial management joint report. In that report, the parties stated that only two issues were in dispute: whether Dr. Townsend violated the standard of care and whether an act or omission damaged the Eskridges. Conspicuously lacking is any reference to the applicability of anti-SLAPP immunity. Thus, two years into the litigation, Dr. Townsend acted as though she was prepared to litigate the merits of the claim.

On September 14, 2011, just a week and one-half before trial, Dr. Townsend filed a trial brief without mentioning anti-SLAPP immunity. In her motions in limine filed the same day, she reiterated her objection to the use of her CPS, DSHS, and WSBA

18

communications on hearsay grounds. Again, there was no reference to RCW 4.24.510 immunity. Finally, she did not request any jury instructions regarding the defense. In view of this record, the court's findings are amply supported, and they, in turn, support its conclusion that Dr. Townsend waived anti-SLAPP immunity.

Despite this record, Dr. Townsend contends that she cannot be deemed to have waived the anti-SLAPP defense because the Eskridges cannot establish prejudice as a result of the delay in her assertion of the defense. Citing *Oltman*, Dr. Townsend argues that "the essential point of *King* and its predecessor, *Lybbert* . . . was that the plaintiff would suffer prejudice from its adversary's conduct if waiver were not applied; absent such prejudice, there is no occasion to apply the waiver doctrine." Appellant's Br. at 20. She contends that in this case because the communications at issue were inadmissible under immunity statutes, the Eskridges suffered no prejudice.

Dr. Townsend misstates the holding in *Oltman*. In that case, the issue before the court was whether the defendant waived an affirmative defense raised in an answer that was filed 11 days beyond the 20-day period allowed by court rule. *Oltman*, 163 Wn.2d at 243. The plaintiffs asked the court to hold that "affirmative defenses are waived if they are asserted in an untimely answer and the late assertion causes actual prejudice to the plaintiff." *Id.* The plaintiffs asserted that they were prejudiced because if the defendant's

defense had been timely raised, they would have had time to refile their complaint in federal court. However, contrary to Dr. Townsend's contention, the *Oltman* court declined to address whether an affirmative defense raised in an untimely answer is only waived if the delay causes actual prejudice, finding that no prejudice was established and therefore the issue did not need to be addressed. *Id.* at 246-47.

As discussed, Washington cases consistently note that the waiver doctrine is designed to avoid delays, prevent a defendant from misdirecting a plaintiff from a defense or masking a defense, and prevent an unnecessary waste of the parties' time and resources. *King*, 146 Wn.2d at 424; *Lybbert*, 141 Wn.2d at 40. The *Lybbert* court stated, "Our holding today merely underscores the importance of preventing the litigation process from being inhibited by inconsistent or dilatory conduct on the part of litigants." *Lybbert*, 141 Wn.2d at 40. Thus, a defendant can be deemed to have waived a defense when his or her conduct substantially undermines the foregoing policies.

Here, the parties litigated this case for close to two years before Dr. Townsend raised the anti-SLAPP defense, despite multiple opportunities for her to do so. Even if we deem Dr. Townsend's citation to "various state statutes" sufficient notice of her intent to raise anti-SLAPP immunity, her actions during two years of litigation belie any intent to use the defense. Dr. Townsend's assertion of the defense at the eleventh hour, after

20

behaving throughout the litigation in a manner inconsistent with that defense, thwarts the very policies the waiver doctrine promotes. Dr. Townsend allowed the Eskridges to spend time and money developing a theory of the case largely premised on her communications to government agencies. Under well-settled precedent, her failure to pursue this affirmative defense while participating in the litigation served as a waiver of the defense.

Dr. Townsend also asserts that the court erred in concluding that RCW 4.24.510 does not apply to cases that involve CPS reporting.[4] Given our disposition of the waiver issue, we need not address this contention.

The trial court did not err in concluding that Dr. Townsend waived the anti-SLAPP defense.

*Hearsay Testimony and Comment on Witness Credibility.* Dr. Townsend next asserts that Ms. Guffin's testimony about statements made to her by the Eskridges and their children should have been excluded because they were inadmissible hearsay. Dr. Townsend also asserts for the first time on appeal that Ms. Guffin improperly commented on the credibility of Dr. Townsend and the Eskridge children. We review a trial court's

---

[4] The Eskridges move to strike portions of Dr. Townsend's brief and the appendix on the basis that they refer to matters not in the record. The appendix is not part of the record and is stricken. *See* RAP 10.3(a)(8). The reference to the article at page 26 of Dr.

21

evidentiary ruling for an abuse of discretion. *Hoglund v. Meeks*, 139 Wn. App. 854, 875, 170 P.3d 37 (2007). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006) (quoting *Associated Mortg. Investors v. G.P. Kent Constr. Co.*, 15 Wn. App. 223, 229, 548 P.2d 558 (1976)).

At the outset, we note that Dr. Townsend is precluded from arguing that Ms. Guffin improperly commented on witness credibility because she failed to make a specific evidentiary objection below. "A party may only assign error in the appellate court on the specific ground of the evidentiary objection made at trial." *State v. Koepke*, 47 Wn. App. 897, 911, 738 P.2d 295 (1987). Dr. Townsend replies that the error is fully reviewable because the Eskridges violated a court order prohibiting witnesses from commenting on the credibility of other witnesses.

Before trial, the trial court cautioned counsel that "[n]o witness is entitled to comment on the credibility of any witness whether they are an expert or a lay person. . . . [I]f anybody attempts to do it whether they have disclosed that opinion or not I will sustain an objection." RP at 953-54. As indicated, Dr. Townsend failed to object to Ms. Guffin's alleged comments on the credibility of witnesses, which precludes our review

Townsend's brief is stricken as well.

22

under RAP 2.5(a). Additionally, any review of the alleged error is compromised by Dr. Townsend's failure to identify the objectionable testimony at issue. Although Dr. Townsend cites numerous pages of record, she fails to point to specific testimony that constitutes a comment on the credibility of the Eskridge children or Dr. Townsend. Because of her failure to discuss her citations to the record with any particularity, we do not address her claim. It is not the function of an appellate court "to comb the record with a view toward constructing arguments for counsel." *In re Estate of Lint*, 135 Wn.2d 518, 532, 957 P.2d 755 (1998); *see* RAP 10.3(a)(6).

As to the hearsay issue, Dr. Townsend contends that the court erred in allowing Ms. Guffin to testify about statements made to her by the Eskridges and their children. However, again Dr. Townsend fails to cite to any authority to support her position and her references to the record are not discussed with particularity. Her argument is essentially limited to one conclusory sentence in which she states, "These statements were hearsay, subject to no exception identified by the Eskridges or the trial court, and should not have been admitted." Appellant's Br. at 34. Given the inadequacy of Dr. Townsend's briefing, we do not address this issue. *See* RAP 10.3(a)(6); RAP 10.4. "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998).

23

Even if we address the issue on its merits, Dr. Townsend's argument fails. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Here, Ms. Guffin's testimony relating to what the Eskridges and their children told to her during her investigation was not offered for the truth of the matter asserted. Rather, it was offered to show the effect of the statements upon Ms. Guffin in determining whether Dr. Townsend's complaint to CPS was founded. Thus, the statements were offered for their "effect upon the hearer," which means that they were not hearsay. 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW & PRACTICE § 801.11, at 346 (5th ed. 2007); 5C TEGLAND, *supra* § 803.15 at 48. The trial court therefore did not err by admitting the testimony.

*Jury Instruction.* Finally, Dr. Townsend contends that the trial court improperly instructed the jury that a person is immune from liability for making a report to CPS as long as the report is made no longer than 48 hours after the person learned of the suspected abuse. She contends that because the trial court earlier ruled against the legal proposition contained in the instruction, it erred in giving an instruction that contradicted this earlier ruling. The Eskridges respond that the jury instruction at issue is the law of the case because Dr. Townsend failed to object to the instruction below.

24

The instruction at issue provided that "[a] person who makes a report to Child Protective Services is immune from liability for that report if . . . the report is made at the first opportunity, but in no case longer than forty-eight (48) hours after there is reasonable cause to believe that the child has suffered abuse or neglect." CP at 111, Instruction 11.

"An appellate court may consider a claimed error in a jury instruction only if the appellant raised the specific issue by exception at trial." *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 702, 853 P.2d 908 (1993). A trial court must be apprised of the specific grounds for objection and given an opportunity to correct any mistakes in time to prevent an unnecessary retrial. If this does not occur, the appellate court cannot review the alleged error. *Ryan v. Westgard,* 12 Wn. App. 500, 510, 530 P.2d 687 (1975). Dr. Townsend's failure to object to the instruction below precludes our review of the alleged error.

Dr. Townsend concedes that she did not object to instruction 11, but contends this court should review the alleged error because she previously argued against the legal proposition when the Eskridges moved for a directed verdict. Admittedly, the court denied the Eskridges' motion and ruled that the immunity provision of RCW 26.44.060 is not lost when the CPS report is made after 48 hours. Nevertheless, Dr. Townsend fails to cite any authority for her proposition that the trial court's prior ruling is determinative of

error in the instruction. Again, due to inadequate briefing and failure to cite to authority, we are unable to review the issue. RAP 10.3.

*Summary.* Dr. Townsend waived the anti-SLAPP defense, the testimony of Ms. Guffin was properly admitted, and the failure to object to instruction 11 precludes our review. Accordingly, we affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____        _____
Siddoway, A.C.J.                                          Brown, J.