IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JARROD S. RIGGS, an individual; GARY R. and LINDA M. ALLAN, husband and wife; BRIAN S. and ERIN E. BARRY, husband and wife; EDWARD J. and ALYCE C. BASS, husband and wife; KENNETH E. and MONICA T. BREEDEN, husband and wife; ROBERT T. and LAURIE A. BRIGANTIC, husband and wife; GARY I. and MELISSA M. DEHANN, husband and wife; DEVIN and KRISTI GEISLER, husband and wife; KIRK W. and KELLY S. HARPER, husband and wife; PORTER and KATE KINNEY, husband and wife; RUSSELL J. and JUDY J. MCBRIDE, husband and wife; JOHN A. MCDONALD, an individual; VALERIE J. MONSON, an individual; ADAM L. and JENNIFER R. MORASCH, husband and wife; CHUCK and JANETTE PAK, husband and wife; STEVEN and MARY PALMQUIST, husband and wife; KLAUS P. and DOROTHY A. REDMANN, husband and wife; ALLEN SHOHAM and ANGELA KINAN, husband and wife; WILLIAM L. and VICKIE L. VAUGHT, husband and wife; TAI N. VO and LIEN MY TROUNG, husband and wife; MARIUSZ and KIMBERLY J. WIERZCHOWSKI, husband and wife; and MARTIN F. ZAKRAJSEK, an individual,<br><br>     Respondents, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 38837-9-III<br><br><br><br><br><br><br><br>ORDER DENYING<br>MOTION FOR<br>RECONSIDERATION<br>AND AMENDING<br>OPINION |

No. 38837-9-III
*Riggs v. Westcliffe Homeowners Ass'n*

WAHED and PARVEEN ABDUL,              )
husband and wife; and JEFFREY T. and  )
ELIZABETH M. ALLGAIER, husband        )
and wife,                             )
                                      )
                Plaintiffs,    )
                                      )
          v.                          )
                                      )
WESTCLIFFE RICHLAND                   )
HOMEOWNERS ASSOCIATION, a             )
Washington non-profit corporation;    )
WESTCLIFFE LLC, a Washington          )
Limited Liability Company; and MARK   )
BAUDER, individually, MILO BAUDER,    )
individually, and DONNA BAUDER,       )
individually,                         )
                                      )
              Petitioners.   )

The court has considered petitioners' motion for reconsideration of this court's opinion dated August 17, 2023, and is of the opinion the motion should be denied.

THEREFORE, IT IS ORDERED that the motion for reconsideration is hereby denied.

IT IS FURTHER ORDERED that the opinion shall be amended as follows:

On page 8, a footnote shall be added to the end of the first full paragraph, which ends as follows:

("[A]n express reservation of power authorizing less than 100 percent of property owners within a subdivision to adopt new restrictions respecting the use of privately owned property is valid, provided that such power is exercised in a reasonable manner consistent with the general plan of the development.").[4]

_____

[4] Citing *Wilkinson*, Westcliffe argues that the fact finder does not need to consider reasonableness if the court determines that an amendment was merely a change to existing covenants. We disagree. The *Wilkinson* court was concerned with amendments to covenants made by the *majority* of homeowners. 180 Wn.2d at 255-59. The *Wilkinson* court explained that a majority of homeowners must exercise their power to create new covenants in a reasonable manner consistent with the general plan of development. *Id*. at 256. However, if the majority of homeowners are permitted to merely change, not create, covenants, then the amendments must be consistent with the general plan of development and related to an existing covenant. *Id*. at 256-57.

Here, however, we are concerned with an amendment to the covenants adopted unilaterally by the developer, not the majority of homeowners. We therefore apply the above stated rule from *Lakemoor* that a reservation of the developer of the right to amend the covenants at their sole discretion is valid, "'so long as it is exercised in a reasonable manner as not to destroy the general scheme or plan of development.'" 24 Wn. App. at 15 (quoting *Flamingo Ranch Ests.*, 303 So. 2d at 666). *Wilkinson* did not overturn or distinguish *Lakemoor* and the rules the *Wilkinson* court applied pertained specifically to amendments to covenants made by the majority of homeowners and not by a single developer.

On page 12, in the first full paragraph, the second sentence shall be amended as

follows:

In *Ebel*, the plat referenced an HOA and 75 percent of homeowners voted to create the HOA.

In the second paragraph on page 12, the first sentence shall be amended as

follows:

No. 38837-9-III
*Riggs v. Westcliffe Homeowners Ass'n*


By contrast, here, only 2 out of 16 plats referred to an HOA and just over one-half of the voting lots voted in favor of the 2016 proposed amendment.

PANEL:    Judges Lawrence-Berrey, Fearing, and Pennell

FOR THE COURT:

_____
GEORGE FEARING
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JARROD S. RIGGS, an individual; | ) | No. 38837-9-III |
| GARY R. and LINDA M. ALLAN, | ) | |
| husband and wife; BRIAN S. and ERIN E. | ) | |
| BARRY, husband and wife; EDWARD J. | ) | |
| and ALYCE C. BASS, husband and wife; | ) | |
| KENNETH E. and MONICA T. | ) | |
| BREEDEN, husband and wife; ROBERT | ) | |
| T. and LAURIE A. BRIGANTIC, husband | ) | |
| and wife; GARY I. and MELISSA M. | ) | |
| DEHANN, husband and wife; DEVIN and | ) | |
| KRISTI GEISLER, husband and wife; | ) | |
| KIRK W. and KELLY S. HARPER, | ) | |
| husband and wife; PORTER and KATE | ) | UNPUBLISHED OPINION |
| KINNEY, husband and wife; RUSSELL J. | ) | |
| and JUDY J. MCBRIDE, husband and | ) | |
| wife; JOHN A. MCDONALD, an | ) | |
| individual; VALERIE J. MONSON, an | ) | |
| individual; ADAM L. and JENNIFER R. | ) | |
| MORASCH, husband and wife; CHUCK | ) | |
| and JANETTE PAK, husband and wife; | ) | |
| STEVEN and MARY PALMQUIST, | ) | |
| husband and wife; KLAUS P. and | ) | |
| DOROTHY A. REDMANN, husband and | ) | |
| wife; ALLEN SHOHAM and ANGELA | ) | |
| KINAN, husband and wife; WILLIAM L. | ) | |
| and VICKIE L. VAUGHT, husband and | ) | |
| wife; TAI N. VO and LIEN MY | ) | |
| TROUNG, husband and wife; MARIUSZ | ) | |
| and KIMBERLY J. WIERZCHOWSKI, | ) | |
| husband and wife; and MARTIN F. | ) | |
| ZAKRAJSEK, an individual, | ) | |
| | ) | |
| Respondents, | ) | |

No. 38837-9-III
*Riggs v. Westcliffe Richland Homeowners Ass'n*


WAHED and PARVEEN ABDUL, )
husband and wife; and JEFFREY T. and )
ELIZABETH M. ALLGAIER, husband )
and wife, )
　 )
　　　　　　　Plaintiffs, )
　 )
　　　　v. )
　 )
WESTCLIFFE RICHLAND )
HOMEOWNERS ASSOCIATION, a )
Washington non-profit corporation; )
WESTCLIFFE LLC, a Washington )
Limited Liability Company; and MARK )
BAUDER, individually, MILO BAUDER, )
individually, and DONNA BAUDER, )
individually, )
　 )
　　　　　　　Petitioners. )

LAWRENCE-BERREY, J. — Washington common law permits a developer of land burdened by protective covenants to reserve the right to unilaterally amend the covenants and, when the developer exercises its right to amend reasonably, the amendment is valid. We conclude that a genuine issue of material fact exists as to whether the developer exercised its right to amend reasonably. We reverse the trial court, which granted partial summary judgment against the developer.

2

FACTS

The material facts are not in dispute. In 2002, Milo Bauder, Donna Bauder, and Mark Bauder formed Westcliffe, LLC (the Developer) for the purpose of developing an upscale neighborhood called Westcliffe, in Richland, Washington.

*The plats of the Westcliffe development*

Between 2003 and 2019, the Developer platted 16 separate phases of the development and sold approximately 368 buildable lots. The development also includes 9 unmarketable tracts and lots, which are either unbuildable, reserved for open space, or utilized for storm drainage. Some of these lots are landscaped, while others remain in their natural state.

The Developer recorded the plat for Phase I in 2003. This plat contains a provision for maintenance by a homeowners' association in the notes: "Lot 1, block 4 is a separate tract set aside for storm drainage pond and utility easement, this tract will be maintained by the 'Home Owners Association.'" Clerk's Papers (CP) at 225 n.11 (some capitalization omitted). The plat for Phase III similarly provides: "The homeowner's association can maintain the landscaping along the frontage of the city-owned pump station tract for aesthetic purposes if so desired." CP at 227 n.12 (some capitalization omitted). None of the other 14 plats reference a homeowners' association.

3

*The Declaration of Covenants, Conditions and Restrictions of Westcliffe (CCRs)*

All lots within the development are subject to the CCRs, first recorded in 2003.

These CCRs did not reference a homeowners' association. They did, however, provide

for two different ways to amend the covenants:

> The Developer or his successors in interest may amend the covenants and
> restrictions of this declaration. In addition, they may be amended by an
> instrument signed by not less than the owners or contract purchasers then
> owning 85 percent of the property described. Amendments shall take effect
> when they have been recorded with the Auditor of Benton County.

CP at 109.

The CCRs impose a number of restrictions on the use of land within the

development, including maximum heights of residences, maximum heights for

landscaping, restrictions on nuisances, and requirements to maintain the premises. They

establish that all buildings, fences, or other structures are required to be approved by the

Developer or the Developer's designated committee. Enforcement of the covenants was

left to individual homeowners or the Developer, and the costs to remedy any violation

would become a lien against the violator's property.

Between 2003 and 2010, the Developer exercised its unilateral right to amend the

CCRs four times. Those amendments included: modification of the date construction

must be completed by a builder, alteration of the building setback and fence requirements,

4

addition of landscaping and soil requirements, and the requirement that homeowners plant native plants and grasses on slopes and banks to prevent erosion.

In 2014, Jarrod Riggs purchased a lot within Phase X. Prior to closing the purchase, the Developer provided him a seller's disclosure form that represented there was no homeowners' association. The record contains other disclosure forms in which the Developer made the same representation to other purchasers in 2007, 2008, 2011, 2013, and 2014.[1] The Developer never represented that a homeowners' association would not be formed.

*Establishment of the homeowners' association*

In 2016, the Developer sought to establish a homeowners' association and to impose mandatory assessments to fund it. It held a vote of homeowners in accordance with the amendment procedure in the CCRs. At the time, 327 votes were authorized. Therefore, to pass the amendment, 278 favorable votes were required. Yet only 230 votes were cast. Of the votes cast, 165 were in favor of the amendment and 65 were opposed.[2]

---

[1] It is undisputed that these were truthful representations of then-existing facts.

[2] The developer held 69 votes. Excluding its votes, the final tally was 96 in favor and 65 opposed.

After the vote failed, the Developer continued to sell lots, until the summer of 2019, when it finished selling all marketable lots. The Developer continued to own and maintain the 9 unmarketable tracts and lots.

In July 2019, the Developer exercised its unilateral right to amend the CCRs by executing "Amendment #4," which established the Westcliffe Richland Homeowners Association (the Association). CP at 283-89. The amendment empowered the Association to maintain and improve the unbuildable lots and tracts, to review and approve building plans, and to enforce the covenants. In addition, the amendment made membership in the Association automatic and mandatory, and imposed assessments that were enforceable through liens and foreclosure.

The Developer recorded the amended CCRs in September 2019. The Developer also incorporated the Association, appointed an initial board of directors, provided $30,000 of initial funding, and conveyed the 9 unmarketable tracts and lots to the Association.

*Procedure*

In July 2020, Jarrod Riggs and a group of homeowners (collectively the Homeowners) sued the Developer, its principals, and the Association (collectively Westcliffe). The Homeowners sought a declaratory order invalidating Amendment #4

6

and the amended CCRs. The Homeowners also asserted claims for negligent misrepresentation, breach of duty to create an association, and violation of the Consumer Protection Act, chapter 19.86 RCW.

The parties subsequently brought cross motions for partial summary judgment, both seeking a judicial determination of the validity of Amendment #4. The trial court granted the Homeowners' motion for partial summary judgment and concluded that Amendment #4 was null and void. We granted Westcliffe's motion for discretionary review.

ANALYSIS

Westcliffe contends the trial court erred by granting the Homeowners' partial summary judgment motion and denying its motion. We agree in part.

*Standard of review*

We review a trial court's order on cross motions for summary judgment de novo. *Wilkinson v. Chiwawa Communities Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). "We will affirm the trial court's order granting summary judgment 'if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Dowler v. Clover Park Sch. Dist. No. 400*, 172 Wn.2d 471, 484, 258 P.3d 676 (2011)); *see* CR 56(c). "An issue of material fact is genuine if the evidence is

7

sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

*Washington common law*

A developer's reservation of the right to amend protective covenants is valid "'so long as it is exercised in a reasonable manner as not to destroy the general scheme or plan of development.'" *Lakemoor Cmty. Club, Inc. v. Swanson*, 24 Wn. App. 10, 15, 600 P.2d 1022 (1979) (quoting *Flamingo Ranch Ests., Inc. v. Sunshine Ranches Homeowners*, *Inc.*, 303 So. 2d 665, 666 (Fla. Dist. Ct. App. 1974)); *accord Shafer v. Bd. of Trustees of Sandy Hook Yacht Club Ests., Inc.*, 76 Wn. App. 267, 273-74, 883 P.2d 1387 (1994) ("[A]n express reservation of power authorizing less than 100 percent of property owners within a subdivision to adopt new restrictions respecting the use of privately owned property is valid, provided that such power is exercised in a reasonable manner consistent with the general plan of the development.").

The parties first argue over which standard of covenant construction we should apply. The Homeowners argue we should strictly construe the covenants against the Developer and in favor of the free use of land. Westcliffe argues we should construe the covenants in a way that protects the collective interests of the Homeowners.

When a dispute involves the covenant maker and homeowners, we apply the traditional rule and strictly construe the covenants against the grantor and in favor of the free use of land. *Riss v. Angel*, 131 Wn.2d 612, 623, 934 P.2d 669 (1997). But we do not apply the traditional rule where the dispute is between homeowners who are jointly governed by the covenants. *Wilkinson*, 180 Wn.2d at 249-50. Instead, "'[t]he court's goal is to ascertain and give effect to those purposes intended by the covenants.'" *Id.* (quoting *Riss*, 131 Wn.2d at 623). In doing so, we place "'special emphasis on arriving at an interpretation that protects the homeowners' collective interests.'" *Riss*, 131 Wn.2d at 623-24 (quoting *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 181, 810 P.2d 27 (1991)).

Here, it is unimportant which standard applies. Both parties agree that the CCRs authorize the Developer to unilaterally amend the covenants, subject to the common law requirement that its right to amend be exercised in a reasonable manner consistent with the general plan of development. This appeal turns not on covenant interpretation, but on whether the Developer exercised its right to amend in a reasonable manner.

When determining whether an amendment to the covenants is a reasonable exercise of power, courts "look to the language of the covenants, their apparent import, and the surrounding facts." *Meresse v. Stelma*, 100 Wn. App. 857, 865, 999 P.2d 1267

(2000). Importantly, an amendment may not create a new covenant unrelated to existing

covenants or inconsistent with the general plan of development. *Wilkinson*, 180 Wn.2d at

256; *Meresse*, 100 Wn. App. at 865-67.

Westcliffe argues that the right to amend was exercised reasonably and contends

that *Ebel v. Fairwood Park II Homeowners' Association*, 136 Wn. App. 787, 150 P.3d

1163 (2007), controls the resolution of this appeal. We agree that *Ebel* is similar, but we

disagree that it controls.

In *Ebel*, several homeowners sought a declaratory judgment that their

homeowners' association (HOA) lacked authority and was not properly formed. *Id.* at

789. The recorded plat for their development referred to an HOA, but no governing

documents were ever filed. *Id.* The original CCRs, recorded in 1972, did not set up an

HOA, but did address architectural control, temporary structures, fences, and other

restrictions. *Id.* The CCRs allowed 75 percent of homeowners to approve amendments.

*Id*. at 790. In 1998, 75 percent of the homeowners signed an amendment to the CCRs

establishing the HOA. *Id.*

The trial court granted summary judgment in favor of the HOA, and the

homeowners appealed. *Id.* On appeal, we decided whether the amendment related to the

existing covenants and was consistent with the general plan of development. *Id*. at

792-93. We reasoned:

> The 1972 covenants put property owners on notice they had to comply with certain requirements or face legal action. The 1998 CCRs provide that they must comply with these [same] requirements or face a fine or legal action. The 1998 amendments simply changed how violations of the covenants would be dealt with and place quarterly assessments on the property. Because the 1969 plat dedication for Fairwood II referred to a homeowners' association and the restrictions on property owners were not significantly changed, the amendment creating the homeowners' association was proper.

*Id.* at 793.

Similarly, here, Amendment #4 did not meaningfully change the covenants that

homeowners agreed to when they purchased their properties. The restrictions and

obligations to comply were unchanged. But instead of homeowners being responsible for

maintenance of common areas and enforcing covenants, these responsibilities were

shifted to a homeowners' association. Nor were the expenses meaningfully increased.

Before, homeowners had to pay to maintain the common areas if they wished them to be

maintained. Now, homeowners still must pay to maintain common areas if they wish

them to be maintained. Before, homeowners who failed to comply with the covenants

risked the cost of compliance becoming a lien against their property. Now, homeowners

who fail to pay an annual assessment—which pays for maintenance of common areas and

11

enforcement of covenants—risk the assessment becoming a lien against their property. *Id.* We conclude, similar to *Ebel*, that the Developer's creation of a homeowners' association to maintain common areas and enforce covenants is an amendment to the covenants, rather than a new covenant that does not relate to existing covenants, and is consistent with the general plan of development.[3]

*Ebel*, nonetheless, has some key factual differences from this case. In *Ebel*, the CCRs provided for an HOA, the plat referenced an HOA, and 75 percent of homeowners voted to create the HOA. *Id.* at 789-90. The combination of these facts supported our conclusion that the reasonableness of the amendment could be decided as a matter of law in favor of the HOA.

By contrast, here, the CCRs did not provide for an HOA, only 2 out of 16 plats referred to an HOA, and just over one-half of the voting lots voted in favor of the 2016 proposed amendment. Nevertheless, this does not mean that the Homeowners are entitled to partial summary judgment. For the reasons below, a reasonable trier of fact could

---

[3] The Homeowners rely on *Holiday Pines Property Owners Ass'n v. Wetherington*, 596 So. 2d 84, 88 (Fla. Dist. Ct. App. 1992), to argue that changing the manner of enforcement from homeowners to a homeowners' association is inconsistent with the general plan of the development. To the extent the Florida appellate court so held, it is inconsistent with *Ebel* and we decline to follow it.

return a verdict in favor of Westcliffe by finding that the Developer exercised its right to amend the covenants in a reasonable manner.

First and foremost, a significant majority of voting members desired to adopt the Developer's 2016 proposed amendment. Excluding the Developer's 69 votes, 96 members voted in favor of the amendment, while only 65 voted against it. Thus, a clear majority of voting homeowners wanted to pay an annual assessment to keep common areas maintained and to have an association enforce the covenants, rather than leave enforcement to individual homeowners.

Second, a reasonable trier of fact could find that in the absence of an association, common areas would fall in disrepair, covenants would be systematically violated, and property values would fall.

Third, the tracts and lots once owned by the Developer have value for the Association, not the Developer. A reasonable trier of fact could find it implausible for the Homeowners to expect the Developer to forever retain the tracts and lots and to pay for their maintenance when only the Association benefits.

*The Homeowners' other arguments are unpersuasive*

The Homeowners first argue that the Developer did not have a sufficient interest in the development to exercise its right to amend the CCRs. They rely on two out-of-state

cases: *Queen's Grant II Horizontal Property Regime v. Greenwood Development Corp.*,

628 S.E.2d 902 (S.C. Ct. App. 2006), and *Armstrong v. Roberts*, 254 Ga. 15, 325 S.E.2d

769 (1985).

However, the Homeowners misstate the rules from those cases. In *Queen's Grant*,

the court reiterated the rule accepted in Washington that "a developer may generally

reserve to himself the right to amend restrictive covenants in his sole discretion, and may

do so without the consent of the grantee, so long as he exercises that right in a reasonable

manner." 628 S.E.2d at 913. In *Queen's Grant* and in *Armstrong*, the courts held that a

developer's right to amend restrictive covenants ends when the developer is divested of

*all* interest in the subdivision. *Queen's Grant*, 628 S.E.2d at 913-14; *Armstrong*, 254 Ga.

at 15-16. The latter rule has no application here, given the uncontested fact that the

Developer owned multiple properties in the subdivision in 2019 when it executed and

recorded Amendment #4.

Second, the Homeowners cite *Lakewood Racquet Club, Inc. v. Jensen*, 156 Wn.

App. 215, 232 P.3d 1147 (2010), for the proposition that a developer lacks standing to

enforce a covenant when it lacks a sufficient property interest in the subdivision. This is

not what we held in *Lakewood*. There, we held that covenant makers "may enforce

restrictive covenants only if they have a justiciable interest in enforcement, generally an

14

ownership interest in the benefited property." *Id*. at 228. Here, it is undisputed that the Developer owned multiple properties in the subdivision when it executed and recorded Amendment #4.

Third, the Homeowners argue that the "Washington Uniform Common Interest Ownership Act" (WUCIOA), chapter 64.90 RCW, expresses Washington public policy with regard to a developer's right to amend covenants. However, WUCIOA applies to common interest communities created *after* July 1, 2018, and expressly exempts communities created before that date. RCW 64.90.080. Thus, WUCIOA does not apply here. In addition, the Homeowners cite no authority for the proposition that WUCIOA expresses the State's public policy as to exempted homeowners' associations. If the legislature sought to apply chapter 64.90 RCW's public policy to such associations, exempting them from the new statute was a poor way of doing it.

Both parties cite the *Restatement (Third) of Property (Servitudes)* § 6.19[4] (AM. LAW INST. 2000), entitled "Developer's Duty to Create an Association and Turn Over Control," to support their arguments. Our Supreme Court has not adopted the

---

[4] Section 6.19(2) requires a developer of a common interest community to turn over control and common property to the HOA "[a]fter the time reasonably necessary to protect its interests in completing and marketing the project." This rule benefits Westcliffe's argument. Here, the Developer attempted to transfer control in 2016 and, although belatedly, attempted again to transfer control in 2019.

No. 38837-9-III

*Riggs v. Westcliffe Richland Homeowners Ass'n*

*Restatement (Third) of Property (Servitudes)* § 6.19. We elect to apply Washington common law.

In summary, we conclude that Amendment #4 is an amendment relating to existing covenants consistent with the general plan of the development. We further conclude that genuine issues of material fact exist as to whether the Developer exercised its right to amend in a reasonable manner. A trial is required.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                                  Pennell, J.

16